MR. CHIEF JUSTICE TURNAGE
delivered the Opinion of the Court.
Appellants, H. Rose and R. Rose, brought an action in the Yellowstone County District Court seeking to declare a sheriff’s sale of appellants’ horses invalid as held under the agisters’ lien statutes, and attempting to nullify the certificate of sale. The District Court found that the sale was valid, that the appellants were not denied their due process by the manner of the notice and sale, and that the remaining horses be returned to appellants upon their posting a $30,000 bond pending resolution of the underlying contract dispute. From this order the Roses appeal.
We affirm the District Court in this case because the appellant had actual notice of the sale.
Appellants raise the following issues on appeal:
1. Whether the sale should have been declared invalid as unconstitutional for failure to provide for notice and an opportunity to be heard prior to deprivation of property?
2. Whether the District Court erred in holding that the notice provisions were complied with in this case?
3. Whether the court erred in failing to declare that the sale was void or voidable?
4. Whether the court erred in using faulty figures in taking judicial notice that the parties’ contract price was too low to include feeding, and in applying that decision to justify the court’s order?
This dispute arose from an oral contract entered into in April 1984. Myers agreed to care for the Roses’ horses at a cost of $12 per head per month. The parties dispute whether Myers was responsible for feeding the horses or merely pasturing them. On November 30,1984, Myers sent notice to the Roses that an agister’s lien sale would take *15 place in December. Money was paid to Myers and the sale was not held. Over the course of the winter, Myers found it necessary to feed the horses at his own expense as the pasture would not support the horses in the winter. Myers contends the agreement was for pasturing only, while the Roses contend it was for the care and feeding of the horses.
On March 1, 1985, Myers again caused to be issued from the Yellowstone County Sheriff’s office, a notice of an agister’s lien sale scheduled for March 11, 1985. The notice was postmarked March 1, 1985, and notices were posted in Yellowstone County. The sale was held March 11, 1985. The Roses contend they did not receive the notice until March 12, 1985. Myers stated he informed the Roses of the sale by telephone on March 2, and 3, 1985.
At the sale, 55 of 129 horses were sold for $6,830 which was then applied by the sheriff to the outstanding bill. The Roses claim the horses’ value was far in excess of $6,830, but that none of the horses were sold as registered and most were sold by lots or in gross.
On March 20, 1985 the Roses filed their petition for declaratory relief, and to set aside the sale. Following a hearing before Judge Barz, the District Court held that the sale was valid and the Roses were not denied their due process. The Roses appeal that order.
Appellants’ horses were sold pursuant to the agisters’ lien statutes, Section 71-3-1201, MCA, et seq. Section 71-3-1201, MCA, states:
“(1) If there is an express or implied contract for keeping, feeding, herding, pasturing, or ranching stock, a ranchman, farmer, agister, herder, hotelkeeper, livery, or stablekeeper to whom any horses, mules, cattle, sheep, hogs, or other stock are entrusted has a lien upon such stock for the amount due for keeping, feeding, herding, pasturing, or ranching the stock and may retain possession thereof until the sum due is paid.”
Enforcement of the lien is found at Section 71-3-1203, MCA. That statute says:
“If payment for such work, labor, feed, or services or material furnished is not made within 30 days after the performance or furnishing of the same, the person entitled to a lien under the provisions of this section may enforce said lien in the following manner:
“(1) He shall deliver to the sheriff or a constable of the county in which the property is located a statement of the amount of his claim against said property, a description of the property, and the name of the owner thereof or of the person at whose request the work, labor, or services were performed or the materials furnished.
*16 “(2) Upon receipt of such statement, the sheriff or constable shall proceed to advertise and sell at public auction so much of the property covered by said lien as will satisfy same.
“(3) Such sale shall be advertised, conducted, and held in the same manner as provided by law for the sale of mortgaged personal property by sheriffs. Such notice shall be given for not less than 5 or more than 10 days prior to the date of sale.
“(4) The proceeds of the sale shall be applied by the sheriff to the discharge of the lien and the cost of the proceedings in selling the property and enforcing the lien, and the remainder, if any, or such part as is required to discharge the claims, shall be turned over by the sheriff to the holders, in the order of their precedence, of the chattel mortgages or other lien claimants of record against said property, and the balance of the proceeds shall be turned over to the owner of the property.
“(5) However, before making seizure of any property under the provisions of this section, the sheriff may require an indemnity bond from the lienor in [sic] not to exceed double the amount of the claim against said property, said bond and the surety or sureties thereon to be approved by said sheriff.”
Our decision in this case is arrived at on other than constitutional grounds. We find it unnecessary to decide whether Section 71-3-1203, MCA, is constitutional and therefore do not consider appellants’ first issue.
The attention of the Montana Legislature is respectfully directed to the due process provisions of Article II, Section 17, of the Montana Constitution, the Fourteenth Amendment of the Constitution of the United States and their application to the notice provisions of Section 71-3-1203, MCA.
The agister’s lien statute was first enacted in 1895 and is an important part of our commercial law, serving as a practical matter both the interest of debtors and creditors. If in a future case this statute was found to be unconstitutional, it would invite chaos and confusion in this area of law.
Appellants’ second issue is whether the District Court erred in holding that the notice requirements were met in this case. Appellants argue that the notices of the sale were untimely and deficient, and that the District Court incorrectly interpreted the statutes in regard to notice.
The Roses claim the notice was untimely as they did not receive notice until one day after the sale. The District Court found that *17 two notices were mailed to the Roses on March 1, 1985, 10 days before the sale. In addition, the Roses received notice in the form of two telephone calls from Myers on March 2, and 3, 1985. The District Court correctly concluded that the Roses received timely notice.
Appellants also claim the notices were deficient in that the notice failed to adequately describe the location of the sale or the property to be sold. The notice stated that the sale was to be held at “10:00 o’clock a.m. 3Vfe miles SW of Laurel.” The notice described the property for sale as “10 mix horse colts, 25 mix mares, 17 mix colts, 1 gray stud, 1 sorrel stud, 1 chestnut stud.”
The description of the horses is satisfactory. The notice described the horses by number, sex, and color. Appellants’ contention that the notice should have described what mix the horses were as well as any special breeding or other special characteristics of the horses is not correct. The notice description was sufficient to alert the public to the nature of the sale and the property to be sold. There is no need for the kind of detailed description advocated by the appellants.
Further, appellants failed to raise the issue of the adequacy of the sale location description during the trial below. Since appellants failed to raise the issue below, we will not address the question on appeal.
The Roses also argue that the District Court incorrectly interpreted the statutes in regard to notice. Section 71-3-1203(3), MCA, states:
“Such sale shall be advertised, conducted, and held in the same manner as provided by law for the sale of mortgaged personal property by sheriffs. Such notice shall be given for not less than 5 or more than 10 days prior to the date of sale.”
The District Court concluded that the notice “must be reasonably calculated to reach the owners of the livestock.” We agree with the District Court’s conclusion that the method of notice was reasonable, and that the Roses received notice of the sale.
Appellant’s third issue is whether the District Court erred in failing to declare the sale void or voidable. Both sides agree that for a sale to be valid, the seller, acting in good faith, must substantially comply with the notice requirements of the power of sale, and the resultant sale must be a fair one. As discussed above, the notice requirements were substantially complied with in this case. Further, we hold that the resultant sale was fair.
*18 The District Court applied the standard of commercial reasonableness to judge the sale. Appellants argue that the sale was not commercially reasonable because the horses were sold in lots for far less than their value. The District Court answered that:
“The Plaintiffs have not presented any evidence that this [sale in lots] is not reasonable. Deputy Sheriff Schmaing, on the other hand, testified that he has conducted thousands of sales and that he often sells horses in this manner. Further, he testified that he was willing to sell the horses individually should any bidder so request. This method was not commercially unreasonable.
Although this sale is not governed by the Uniform Commercial Code, that code’s discussion of commercial reasonableness is helpful. Section 30-9-507(2), MCA, states:
“The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner. If the secured party either sells the collateral in the usual manner in any recognized market therefor or if he sells at the price current in such market at the time of his sale or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold he has sold in a commercially reasonable manner . . .”
The above authority supports the District Court’s decision. Although the appellants claim the horses were worth far more than the selling price, that alone is insufficient to render the sale unreasonable. Likewise, the fact that the horses were sold by a method different from that suggested by appellants (in lots as opposed to individually) does not render the sale unreasonable. The District Court correctly decided that the sale was commercially reasonable, and we will not reverse the District Court’s decision.
The final issue raised by appellants is whether the District Court erred in using faulty figures in taking judicial notice that the parties’ contract price was too low to include feeding, and in applying that holding to justify the court’s order.
In its memorandum in support of its order, the District Court stated:
“Before turning to the law regarding the sale, the Court takes notice of two factors. The Court takes judicial notice that the sum of $12 per head per month cannot possibly include the cost of providing extra feed for the horses. The Court further notes that the Plaintiffs have shown knowledge of this fact by making $7,000 pay *19 ment to the Defendant prior to March, 1985. (114 head x $12 per month x 8 months = $1,824)
“The Court takes notice of this, not to rule on the merits of the contract dispute, but rather as a factor in the notice Plaintiffs had regarding the sale.”
Appellants argue that the District Court erroneously substituted its judgment for that of the parties who agreed on a contract price knowing the horses were to remain with Myers for an indefinite period of time. The court calculated 114 head x $12 per head x 8 months equals $1,824. Since the Roses paid Myers $7,000 between December, 1984, and February, 1985, the court inferred that the Roses recognized that they owed more than $12 per head per month, and that the excess would be applied to pay for feed over and above the original contract amount. This is wrong.
The correct calculations are: 114 head x $12 per head x 8 months equals $10,944, not $1,824. Thus, appellants argue, the $7,000 payment was a partial payment on the $10,944, the balance to be paid when the horses were retrieved. The court drew inferences from incorrect figures and erred in applying those inferences to justify its decision.
Further, appellants argue the court took judicial notice of facts not properly subject to judicial notice.
Appellants are correct when they say the court incorrectly calculated the bill and took judicial notice of a fact not appropriate for judicial notice. Rule 201, M.R.Evid. states:
“(b) Kinds of facts. A fact to be judicially noticed must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned.”
However, the error is harmless as there is ample evidence to support the District Court’s conclusion. On cross-examination the appellant Richard Rose, testified as follows:
“Q. Mr. Rose, I believe you stated that the agreement you had with Mr. Myers was that you were to pay him $12.00 per month per horse unit; is that correct? A. That is correct.
“Q. Now that was only for pasture; wasn’t it? That didn’t include feed? A. That is correct.
“Q. And if he had to feed them, that would be an additional charge; wouldn’t it? A. Yes.
*20 “Q. And it doesn’t include any labor on his part, either; does it? A. No.”
Thus, even without the court’s calculations there is ample evidence that the appellants owed Myers more than $10,944 and only paid $7,000. The court took judicial notice that appellants knew they owed Myers for feed and labor costs because they paid Myers in excess of $12 per head per month. The court’s calculations were wrong, but the result is the same. Appellants’ own testimony revealed that the Roses knew they owed Myers for feed and labor costs in excess of the contract price, so although the court improperly took judicial notice of the fact, the result is supported by the evidence. Therefore, it is not necessary to reverse the District Court on this issue.
The order of the District Court is affirmed in all respects.
MR. JUSTICES HARRISON, SHEEHY, WEBER, GULBRANDSON and MORRISON concur.