FILED

08/22/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0394

DA 16-0394

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2017 MT 204

JEFFREY R. FOLSOM,

      Plaintiff, Appellee, and Cross-Appellant,

    v.

MONTANA PUBLIC EMPLOYEES' ASSOCIATION, INC.,
a Montana non-profit Corporation,

      Defendant, Appellant and Cross-Appellee.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DV 14-832(C)
Honorable Heidi Ulbricht, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          James P. Molloy, Gallik, Bremer & Molloy, P.C., Bozeman, Montana

      For Appellee:

          Kim T. Christopherson, Attorney at Law, Christopherson Law Office,
P.C., Kalispell, Montana

          Submitted on Briefs:  March 8, 2017

          Decided:  August 22, 2017

Filed:

_____
Clerk

Justice Dirk M. Sandefur delivered the Opinion of the Court.

¶1    Montana Public Employees' Association (MPEA) appeals judgments of the Montana Eleventh Judicial District Court, Flathead County:  (1) decreeing that MPEA breached its duty of fair representation (DFR) to Jeffrey R. Folsom (Folsom) and engaged in related common law fraud; (2) awarding Folsom $47,550 in attorney fees as an element of compensatory damages on his DFR claim; and (3) awarding $50,000 in punitive damages on his related common law fraud claim.  MPEA further appeals the court's denial of MPEA's subsequent M. R. Civ. P. 59(e) and 60(b)(6) motions for post-judgment relief. Folsom cross-appeals the District Court's denial of his request for compensatory lost wages on the DFR claim and his subsequent motion for post-judgment relief under M. R. Civ. P. 59(a)(2) and 60(b)(1) and § 25-11-102(3), MCA.   We reverse the District Court's judgments and remand for further proceedings on Folsom's DFR claim.

## ISSUES

¶2    We restate the issues on appeal as:

*1. Is Folsom's common law fraud claim independently cognizable distinct from his DFR claim on the record in this case?*

*2. Did the District Court erroneously conclude that insufficient evidence of causation precluded Folsom's recovery of lost wages and benefits as compensatory damages on his DFR claim?*

*3. Did the District Court erroneously award attorney fees to Folsom as an element of compensatory damages on his DFR claim?*

*4. Are punitive damages recoverable absent a compensatory damages award on a predicate claim for relief?*

*5. Are punitive damages recoverable against a union predicated on a Montana DFR claim?*

2

*6. Did the District Court erroneously deny MPEA's motions for post-judgment relief under M. R. Civ. P. 59(e) and 60(b)(6)?*

**FACTUAL AND PROCEDURAL BACKGROUND**

¶3      Folsom was a non-probationary police officer employed by the City of Whitefish (City).  In 2012, Folsom was one of many advocating that the Whitefish Police Protective Association (WPPA), a union of officers of the Whitefish Police Department, affiliate with MPEA.  Following a contentious process that resulted in WPPA affiliating with MPEA, the City suspended Folsom on February 13, 2013, with notice of intent to terminate his employment for cause under the collective-bargaining agreement (CBA) between the City and MPEA.

¶4      At the time of the termination notice, MPEA was the exclusive bargaining agent for the WPPA under the CBA and the Montana Public Employees' Collective Bargaining Act.[1] The CBA provided a four-step employee grievance process.  Either MPEA or the aggrieved employee could initiate Steps 1 and 2 of the process but only MPEA could initiate Steps 3 and 4.  MPEA field representative Darcy Dahle timely initiated Steps 1 and 2 on Folsom's behalf.

¶5      After the City denied Folsom's grievance at Steps 1 and 2, Dahle attempted to initiate Step 3 of the process by correspondence to the City Manager dated April 2, 2013. The City Manager rejected the Step 3 grievance as untimely initiated beyond the ten-day

---

[1] *See* Title 39, chapter 31, MCA.

3

deadline specified by the CBA.[2] On the condition that MPEA produce certain documentation, the City nonetheless offered to participate in the Step 3 process despite its assertion that it had no obligation to do so. Dahle refused the City's document request and proposed binding arbitration to resolve the Step 3 timeliness issue. Upon the City's rejection of the arbitration proposal, Dahle next proposed to resolve the issue by mediation through the Board of Personnel Appeals.[3] Standing on its assertion that MPEA failed to timely initiate Step 3, the City refused and declared Folsom's grievance rights exhausted pursuant to the terms of the CBA.[4]

¶6 MPEA ultimately referred the matter for further action to in-house counsel, Carter Picotte, who was thereafter exclusively responsible for handling Folsom's grievance on behalf of MPEA. Picotte submitted a notice of appeal to the City Police Commission pursuant to CBA Step 4 and § 7-32-4155(1), MCA.[5] In response, the City reasserted that

---

[2] The record on appeal indicates that a factual dispute may persist as to whether MPEA's attempted initiation of the Step 3 process was indeed untimely.

[3] *See* Admin. R. M. 24.26.695A.

[4] MPEA did not seek relief from the Board of Personnel Appeal through an unfair labor practice complaint.

[5] Independent of collective bargaining agreements, Montana law mandates establishment of a three-person police commission in all cities and towns that have "organized police departments" that have "three or more full-time law enforcement officials." Section 7-32-4151, MCA. *Inter alia*, the police commission "shall hear and decide appeals brought by any member or officer of the police department who has been disciplined, suspended, removed, or discharged." Section 7-32-4155(1), MCA. Upon notice and hearing, the police commission has the authority "to sustain, modify, or overrule the disciplinary order of the mayor, city manager, or chief executive." Section 7-32-4160, MCA.

Folsom and MPEA waived the police commission remedy under the terms of the CBA by failing to timely initiate CBA Step 3.

¶7 Over the next year, Picotte scheduled several meetings with Folsom to discuss the status and future course of his grievance but ultimately cancelled each meeting. Picotte nonetheless repeatedly assured Folsom that he was taking appropriate action to enforce his grievance rights. On or about October 25, 2013, Picotte specifically told Folsom that he had filed and would aggressively prosecute a district court action against the City to enforce Folsom's CBA grievance rights. Picotte contemporaneously made a similar representation to MPEA's executive director, Quint Nyman. On at least one occasion, Nyman directed Picotte to proceed on Folsom's grievance without delay.

¶8 However, at some point in mid-2014, Folsom discovered that, contrary to earlier representations, Picotte had taken no action on his behalf. Upon this discovery, Folsom retained separate counsel and, on August 6, 2014, filed a district court complaint asserting a wrongful discharge claim against the City and DFR and common law fraud claims against MPEA. In essence, the claims alleged that: (1) the City wrongfully terminated him in violation of the CBA; (2) MPEA breached its duty to fairly represent him; and (3) MPEA, through Picotte, fraudulently induced Folsom to effectively waive his grievance rights through inaction. As compensatory damages on his claims against the union, Folsom prayed for lost wages and benefits as well as attorney fees incurred in prosecuting the action. Folsom also prayed for punitive damages on the fraud claim. Upon learning of the complaint from an MPEA field representative, Nyman spoke with Picotte, who assured Nyman that he would be taking appropriate action in defense of MPEA and in furtherance

5

of Folsom's grievance rights. Picotte made a similar representation to Nyman on at least one occasion thereafter.[6]

¶9 Upon service of the district court complaint, Picotte timely appeared and answered Folsom's claims against MPEA. On September 19, 2014, Folsom served comprehensive discovery requests on Picotte that included sixty-nine M. R. Civ. P. 36 (Rule 36) requests for admission of pertinent facts. Inexplicably, Picotte did not respond. Based on MPEA's Rule 36 deemed admissions by default and a supplemental affidavit showing, Folsom subsequently moved for M. R. Civ. P. 56 (Rule 56) summary judgment that MPEA was liable on his DFR and common law fraud claims. Folsom did not seek summary judgment on his wrongful discharge claim against the City or on the causation and damages elements of his claims against the union. The City separately moved for summary judgment on Folsom's wrongful discharge claim.

¶10 Without seeking relief from the Rule 36 deemed admissions, Picotte filed a response opposing Folsom's motion for summary judgment on the asserted grounds that: (1) the fraud claim failed to state a claim against MPEA; (2) MPEA's general pleading denials raised genuine issues of material fact precluding summary judgment; (3) as a non-party to the agreement, Folsom had no standing to enforce the CBA; and (4) Folsom failed to

---

[6] On January 16, 2015, almost two years after the City's notice of intent to terminate, a year after he misrepresented to Folsom that he had filed the action, and 6 months after Folsom filed this action, MPEA, through Picotte, filed a separate district court action to compel the City to participate in a suspension or discharge appeal hearing before the City Police Commission pursuant to CBA Step 4 and §§ 7-32-4155(1) and -4160, MCA. Montana Eleventh Judicial District Court Cause No. DV-15-036(C). As of the date of the post-summary judgment evidentiary hearing in this case on September 1, 2015, the court file indicated no more than the filing of the complaint and issuance of a summons.

6

exhaust his contract grievance remedies, *i.e.*, CBA Step 4 (police commission appeal). Picotte attempted no responsive factual showing to preclude summary judgment and inexplicably failed to appear and represent MPEA at the summary judgment hearing on May 26, 2015.

¶11 On June 17, 2015, while the summary judgment ruling was still pending after hearing, Folsom entered into a settlement agreement with the City wherein he resigned his employment and released all claims against the City without compensation. The agreement included an express disclaimer of any City liability related to Folsom's claims. The agreement barred the City from "actively challeng[ing]" Folsom's claims against MPEA but recognized that City witnesses could "testify truthfully in any proceeding if called to testify." The District Court ultimately dismissed the City from the action with prejudice pursuant to the agreement.

¶12 On July 15, 2015, based on MPEA's Rule 36 deemed admissions, Folsom's supplemental affidavit showing, and no responsive factual showing from MPEA, the District Court granted summary judgment against MPEA on Folsom's DFR and common law fraud claims. On the DFR claim, the court decreed, *inter alia*, that the record facts showed that "MPEA arbitrarily ignored Folsom's grievance or processed it in a perfunctory manner," thereby effectively extinguishing his CBA grievance rights. Concluding that Picotte's misrepresentations to Folsom on or about October 25, 2013, regarding the fictitious district court action against the City constituted both common law fraud and actual fraud, as defined by § 27-1-221(3) and (4), MCA, the District Court further granted

summary judgment that MPEA was liable for punitive damages on Folsom's common law fraud claim.

¶13 On September 1, 2015, the District Court conducted a post-summary judgment evidentiary hearing to determine compensatory damages on Folsom's DFR claim and punitive damages on the fraud claim. Appearing on MPEA's behalf, Picotte acknowledged that he had "made some misrepresentations of scheduling and that sort of thing to Mr. Folsom because I got busy and I didn't have the courage to tell him that I just hadn't gotten it done." However, Picotte asserted that his false statements caused "no real damages" because Folsom "won't have lost his job until the grievance procedure and litigation fomented by it are concluded." Picotte further asserted that the City, not MPEA, was exclusively responsible for Folsom's discharge and any resulting wage loss. Based on the assertion that Picotte's failure to act after the City refused to participate in the Step 3 process in April of 2013 effected a waiver of his CBA grievance rights and caused him to have to sue the City and MPEA, Folsom requested compensatory damages for wages and benefits lost after April 1, 2013,[7] emotional distress, and attorney fees incurred in prosecuting the action. Folsom also requested $50,000 in punitive damages.

¶14 On March 14, 2016, prior to issuance of the District Court's ruling on the damages, MPEA appeared through new counsel and filed a motion pursuant to M. R. Civ. P. 60(b) (Rule 60(b)) requesting that the court delay its damages ruling to allow MPEA to file an appropriate motion for relief from the prior summary judgment rulings based on alleged

---

[7] Folsom apparently pegged April 1, 2013, as the date after which he would have, or should have, been reinstated to his employment at Step 3 but for MPEA's breach of duty.

gross neglect and misconduct by Picotte in his representation of MPEA. On March 16, 2016, without reference to MPEA's motion, the District Court issued findings of fact, conclusions of law, and judgment on Folsom's DFR and common law fraud claims based on the court's prior grant of summary judgment and the post-summary judgment hearing record.

¶15 On the ground that he failed to meet his threshold burden of proving that the City wrongfully terminated his employment in violation of the CBA, the District Court denied Folsom's claim for lost wages and benefits. The court also denied Folsom's claim for emotional distress damages due to lack of proof of related emotional distress. However, on the ground that MPEA's failure to fairly represent him in the grievance process "forced [him] to hire a lawyer in order to obtain representation that the MPEA should have provided in the first place," the court awarded Folsom $47,550 in compensatory damages for attorney fees incurred in prosecuting the district court action. The court also awarded him $50,000 in punitive damages on his common law fraud claim.

¶16 Folsom and MPEA respectively filed alternative M. R. Civ. P. 59 and 60(b) motions for post-judgment relief. On the asserted grounds of unfair surprise and that the District Court erroneously interjected lack of evidence as an affirmative defense *sua sponte*, Folsom requested a new trial to allow him to present evidence proving that the City discharged him in violation of the CBA. MPEA sought relief on the asserted ground of prejudicial gross neglect and misconduct by Picotte in the representation of MPEA. MPEA supported its motion with exhibits and affidavits showing its reliance on Picotte and its belated discovery of his alleged gross neglect and misconduct.

¶17 The District Court effectively denied the parties' cross-motions by allowing them to time-out without action pursuant to M. R. Civ. P. 59(f) and 60(c)(1). Upon entry of final judgment on June 15, 2016, both parties timely appealed. MPEA asserts that the District erroneously awarded Folsom attorney fees and punitive damages and erroneously denied its alternative motions for post-judgment relief. Folsom asserts that the District Court erroneously denied his claim for lost wages and benefits as compensatory damages on his DFR claim and erroneously denied his alternative motion for related post-judgment relief.

## STANDARDS OF REVIEW

¶18 The standard of review of district court findings of fact is whether they are clearly erroneous on the pertinent evidentiary record. We review conclusions of law de novo for correctness. The standard of review of district court rulings on motions for post-judgment relief under M. R. Civ. P. 59 and 60(b) is an abuse of discretion. *Lee v. USAA Cas. Ins. Co.*, 2001 MT 59, ¶ 27, 304 Mont. 356, 22 P.3d 631 (Rule 59); *Essex Ins. Co. v. Moose's Saloon, Inc.*, 2007 MT 202, ¶ 16, 338 Mont. 423, 166 P.3d 451 (Rule 60(b)).

## DISCUSSION

¶19 *1. Is Folsom's common law fraud claim independently cognizable distinct from his DFR claim on the record in this case?*

¶20 The question of whether separately pled claims for relief are independently cognizable on the record in the same action is a question of law. The District Court granted summary judgment against MPEA on Folsom's separate DFR and common law fraud claims. Conflating common law fraud with "actual fraud," as defined by § 27-1-221, MCA, the District Court concluded that "Folsom has established that MPEA committed

10

the tort of fraud so, pursuant to [§] 27-1-221, MCA, [he] is entitled to seek punitive damages as a consequence thereof." On the ground that "all of attorney Picotte's conduct related exclusively to his handling of Folsom's grievance," MPEA asserts that Folsom's common law fraud claim is legally and factually subsumed in his DFR claim and thus not independently cognizable in this action. Folsom contrarily asserts that his common law fraud claim is cognizable independent of his DFR claim based on a different factual predicates. The parties' briefing and the District Court's judgments clearly indicate that Folsom separately pled DFR and common law fraud claims to circumvent a perceived per se federal law ban on recovery of punitive damages on DFR claims.

¶21 A plaintiff generally has a choice of any remedy cognizable at law or equity and may generally plead alternative claims even if based on the same predicate facts. *Corporate Air v. Edwards Jet Center*, 2008 MT 283, ¶¶ 49-50, 345 Mont. 336, 190 P.3d 1111; *Glacier Campground v. Wild Rivers, Inc.*, 182 Mont. 389, 403, 597 P.2d 689, 696 (1978); M. R. Civ. P. 8(a)(2). A plaintiff may recover under both alternative claims if the remedies are consistent. *Corporate Air*, ¶ 40. However, a plaintiff "may not recover on more than one theory for the same injury" or damages. *Regions Bank v. Griffin*, 217 S.W.3d 829, 832 (Ark. 2005); *Olympic Hotels Corp. v. Johnson Wax Dev. Corp.*, 908 F.2d 1363, 1371 (7th Cir. 1990) (distinguishing between superseded procedural pleading and still viable substantive equity aspect of election of remedies doctrine). If alternative remedies are inconsistent, the plaintiff must elect one or the other and cannot obtain judgment on both. *Kaufman Bros. v. Home Value Stores, Inc.*, 2012 MT 121, ¶¶ 17-20, 365 Mont. 196, 279 P.3d 157; *Parsons v. Rice*, 81 Mont. 509, 521, 264 P. 396, 401 (1928).

11

Alternative claims grounded on the same conduct are consistent and independently cognizable only if the claims are based on independent legal duties and the same or related conduct constitutes a breach of each independent legal duty. *Dewey v. Stringer*, 2014 MT 136, ¶¶ 8, 14-15, 375 Mont. 176, 325 P.3d 1236 (discussing conceivably coexistent fraud, constructive fraud, and contract claims based on independent legal duties related to real estate purchase agreement); *Draggin' Y Cattle Co., Inc. v. Addink*, 2013 MT 319, ¶ 33, 372 Mont. 334, 312 P.3d 451 (discussing coexistent contract and tort remedies for breach of professional services contract and negligent performance of services); *Tin Cup Co. Water v. Garden City Plumbing & Heating, Inc.*, 2008 MT 434, ¶ 25, 347 Mont. 468, 200 P.3d 60 (discussing coexistent contract and tort remedies based on professional services contract); *Corporate Air*, ¶ 49 (fraud claim not necessarily precluded by contract claim based on same facts).

¶22    If the facts support either type of claim and neither applicable statute of limitation has expired, a plaintiff may elect either coexistent remedy regardless of whether the claim may be more akin to one type of claim than the other. *Draggin' Y Cattle Co., Inc.*, ¶¶ 33-36. However, regardless of characterization, alternative claims based on the same breach of the same legal duty are merely duplicative or subsumed in one or the other and, thus, not independently cognizable in the same action. *May v. ERA Landmark Real Estate*, 2000 MT 299, ¶¶ 41-43, 302 Mont. 326, 15 P.3d 1179 (claim for breach of real estate agent fiduciary duty essentially duplicative of other asserted tort claims based on same predicate facts); *Joyce v. Garnaas*, 1999 MT 170, ¶¶ 17-19, 295 Mont. 198, 983 P.2d 369 (claim for

12

breach of lawyer fiduciary duty not distinctly cognizable from professional negligence claim on same predicate facts).

¶23　Implied from their federal or state labor law status as the exclusive bargaining agents of their memberships, labor unions have a common law duty to fairly represent all of their members in the enforcement of grievance rights provided by collective bargaining agreements. *E.g.*, *Ford v. University of Montana*, 183 Mont. 112, 121-22, 598 P.2d 604, 608-10 (1979), *overruled on other grounds by Teamsters Local No. 45 v. State ex rel. Bd. of Personnel Appeals* (*Teamsters I*), 195 Mont. 272, 274-78, 635 P.2d 1310, 1311-13 (1981); *Int'l Bhd. of Elec. Workers v. Foust*, 442 U.S. 42, 46-48, 99 S. Ct. 2121, 2125 (1979); *Woods v. Graphic Communications*, 925 F.2d 1195, 1203 (9th Cir. 1991). However, due to the broad discretion that unions must have to balance the often competing interests of individual members and the union as a whole, mere negligence is insufficient alone to constitute a breach of the duty of fair representation. *Vaca v. Sipes*, 386 U.S. 171, 191-92, 87 S. Ct. 903, 917-18 (1967) (union not required to exhaust all grievance remedies in every case); *Woods*, 925 F.2d at 1203 ("union need not process meritless grievances"); *Robesky v. Quantas Empire Airways, Ltd.*, 573 F.2d 1082, 1089 (9th Cir. 1978); *see also*, *Ford*, 183 Mont. at 121-23, 598 P.2d at 609-10 (union has broad good-faith discretion to "sift-out" or abandon frivolous or meritless grievances and to unilaterally settle with employer). A breach of the duty of fair representation thus requires proof of fraud, bad faith, gross negligence, or other arbitrary or unlawful disregard or discrimination in the enforcement of grievance rights. *Ford*, 183 Mont. at 121-23, 598 P.2d at 609-10; *Teamsters Local No. 45 v. State ex rel. Bd. of Personnel Appeals* (*Teamsters II*), 223 Mont.

89, 96, 724 P.2d 189, 193 (1986); *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Employees v. Lockridge*, 403 U.S. 274, 299, 91 S. Ct. 1909, 1924 (1971); *Vaca*, 386 U.S. at 190, 87 S. Ct. at 916; *Woods*, 925 F.2d at 1203; *Robesky*, 573 F.2d at 1089-90.

¶24 In contrast, the essence of common law fraud is a knowingly or recklessly false representation intended to induce another's detrimental reliance thereon. *See Estate of Kindsfather*, 2005 MT 51, ¶ 17, 326 Mont. 192, 108 P.3d 487 (nine-element Montana formulation of common law fraud); *see also*, § 27-1-712, MCA (Field Code formulation of common law fraud adopted from Cal. Civ. Code). Thus, the essential legal duty underlying common law fraud is the duty to be truthful in material representations of fact intended to induce another's reliance thereon. *Kindsfather*, ¶ 17; § 27-1-712, MCA.

¶25 On the Rule 56 factual record in this case, Folsom attempted to plead, and the District Court found, distinct factual bases supporting his separately pled DFR and common law fraud claims. The court granted summary judgment on Folsom's DFR claim based on MPEA's arbitrary disregard or perfunctory handling of his grievance as evidenced by its failure to either timely invoke grievance Step 3 or "take advantage of the City's offer" to proceed with Step 3 regardless of timeliness. The District Court separately granted summary judgment on Folsom's common law fraud claim based on Folsom's detrimental reliance on Picotte's false representation on or about October 25, 2013, that he had instituted and was actively prosecuting litigation against the City to enforce Folsom's grievance rights. In effect, Folsom and the District Court parsed the continuum of Picotte's handling of Folsom's grievance rights into two separate parts to support two separate claims: (1) the failure to timely initiate, or subsequently accept the City's offer to

14

participate in, grievance Step 3 and (2) Picotte's ensuing failure, and related misrepresentations, to file an appropriate action against the City to enforce Folsom's grievance rights.

¶26 Regardless of this artificial parsing of the Rule 56 factual record, the District Court's summary judgment analysis, and its subsequent findings and conclusions on damages, clearly manifest an indivisible continuum of conduct and directly related misrepresentations by Picotte in the handling of Folsom's grievance rights. The course of Picotte's conduct spanned his alleged failure to timely exercise or enforce the Step 3 process in April 2013 through the time that Folsom discovered in mid-2014 that Picotte had not instituted enforcement litigation against the City as represented. MPEA's duty of fair representation included the duty to fairly represent Folsom in the CBA grievance process and in the enforcement of those grievance rights in the face of any breach of the agreement by the City. Picotte's *misrepresentation* to Folsom that he had instituted and was prosecuting enforcement litigation against the City was inseparable as matters of fact and law from his *failure to act as represented*. On this record, Picotte's alleged mishandling of Folsom's grievance rights, and his related misrepresentations in regard thereto, were part and parcel of the union's alleged breach of duty of fair representation.

¶27 In *May,* a real estate seller asserted multiple tort and contract claims against his real estate agent based on the agent's drafting and tender of a seller counteroffer to the buyers that included language that exposed the seller to environmental clean-up liability on a former gas station property. *May,* ¶¶ 7-12. On appeal, we affirmed the district court dismissal of a breach of fiduciary duty claim that was essentially "repetitious" of the factual

15

and legal bases for the plaintiff's separately pled professional negligence, fraud, negligent misrepresentation, and bad faith claims "based upon the same facts," which "add[ed] nothing to [the] claims for relief." *May*, ¶¶ 37-43.

¶28    In *Joyce*, a former client asserted a malpractice claim against his former lawyer in 1995 alleging that the lawyer negligently caused the client to forfeit a bona fide personal injury claim in 1984 by failing to timely serve process on the third-party tortfeasor within three years of issuance of the summons in 1981. *Joyce*, ¶¶ 3-4. To circumvent the absolute bar of the applicable ten-year statute of repose barring the malpractice claim after 1994, the former client asserted that a subsequent misrepresentation by the lawyer that the client's claim was proceeding in active litigation was an independent breach of the lawyer's fiduciary duty, separate from the lawyer's initial negligence and silence regarding the missed service deadline, thus giving rise to an independent tort claim not barred by the applicable statutes of limitation and repose. *Joyce*, ¶¶ 17-18. In affirming the dismissal of the malpractice claim pursuant to the ten-year statute of repose, we concluded that the lawyer's breach of professional duty occurred at the time of his initial malpractice, "not years later" when he continued to conceal it by subsequent misrepresentation. *Joyce*, ¶ 19. We thus held that "[t]here [was] no separate claim for the failure to disclose the effect" of the initial malpractice distinct from the malpractice claim—"any such claim is subsumed with the initial malpractice" claim. *Joyce*, ¶ 19.

¶29    Here, in the context of handling of an employee's grievance rights, a union's duty of fair representation broadly encompasses, *inter alia*, the essential legal duty that is the basis of a common law fraud claim, *i.e.*, the duty to be fair and truthful to the employee in

16

the handling of his or her grievance rights. As in *May* and *Joyce*, Folsom is attempting to creatively cleave two independent tort claims out of one and, as in *Joyce*, for an ulterior purpose, *i.e.*, creating a predicate for punitive damages perceived to be unavailable on a DFR claim. However, similar to the claims at issue in *May* and *Joyce*, Folsom's separately pled common law fraud claim is not based on a breach of legal duty independent of the breach of legal duty that is the basis of his DFR claim. As manifest by his claim for lost wages, the alleged harm resulting from MPEA's breach of duty is the same on both claims—loss of his employment and resulting wages in violation of the CBA. We hold that Folsom's separately pled common law fraud claim is necessarily subsumed in his DFR claim and, thus, not independently cognizable on the record in this case.

¶30　*2. Did the District Court erroneously conclude that insufficient evidence of causation precluded Folsom's recovery of lost wages and benefits as compensatory damages on his DFR claim?*

¶31　Though it granted summary judgment that MPEA breached its duty of fair representation, the District Court denied Folsom's claim for compensatory lost wages and benefits on the ground that he failed to prove that the City terminated his employment in violation of the CBA. Folsom subsequently moved for post-judgment relief from the court's ruling pursuant to Rules 59(a)(2) and 60(b)(1) and § 25-11-102(3), MCA. On appeal, Folsom acknowledges his burden "to prove that the City breached the CBA" but nonetheless asserts that the District Court erred because: (1) it improperly injected proof of causation as an affirmative defense *sua sponte*; (2) sufficient proof of wrongful termination existed on the Rule 56 record in any event; and (3) MPEA's pleading

17

admission that the City lacked cause for termination constituted a judicial admission of causation on his DFR claim.

¶32 Causation and damages are essential elements of every tort claim. *Oliver v. Stimson Lumber Co.*, 1999 MT 328, ¶ 41, 297 Mont. 336, 993 P.2d 11. A plaintiff has the burden of proving all essential elements of a tort claim by a preponderance of the evidence. *Oliver*, ¶ 41; §§ 26-1-401, -402, and -403(1) MCA. Here, upon obtaining summary judgment that MPEA breached its duty of fair representation, Folsom had the burden of proving that MPEA's breach of duty caused his claimed damages.

¶33 Mere proof of a union breach of duty is insufficient to prove that the breach caused harm to the employee. *Vaca*, 386 U.S. at 192-98, 97 S. Ct. at 918-21. A union's breach of duty will not necessarily cause harm and resulting damages to the employee in every case. *Vaca*, 386 U.S. at 197-98, 97 S. Ct. at 920-21. To prove that a union's breach of duty caused harm and resulting damages, the employee must prove (1) that the employer disciplined or discharged the employee in violation of the collective-bargaining agreement, *see Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 570-71, 96 S. Ct. 1048, 1059 (1976); *City of Detroit v. Goolsby*, 535 N.W.2d. 568, 573 (Mich. App. 1995); *Womble v. Local Union 73, Int'l Bhd. of Elec. Workers*, 826 P.2d 224, 227 (Wash. App. 1992); *see also, Dutrisac v. Caterpillar Tractor Co.*, 749 F.2d 1270, 1275 (9th Cir. 1983) (union breach of duty harmless only if employee grievance was frivolous); and (2) that the union's breach of duty caused the employee to suffer damages *in excess* of those caused by the employer's breach of the collective bargaining agreement. *Vaca*, 386 U.S. at 197-98, 97 S. Ct. at 920-21 (union not liable for damages caused by the employer). Absent collusion

18

with the employer,[8] unions are generally not liable for an employee's lost wages because lost wages are the direct and natural consequence of the employer's independent breach of the collective bargaining agreement. *Vaca*, 386 U.S. at 196-98, 97 S. Ct. at 920-21 (union breach of duty does not exempt employer from contract damages he would otherwise have to pay); *Czosek v. O'Mara*, 397 U.S. 25, 29, 90 S. Ct. 770, 773 (1970) (union liable only for damages that flow from own conduct); *Foust*, 442 U.S. at 52, 99 S. Ct. at 2128 (Blackmun, J., concurring) (union damages typically will be minimal with "bulk" of damages "paid by the . . . perpetrator of the wrongful discharge").[9, 10]

¶34    Here, the District Court's denial of Folsom's claim for lost wages and benefits because he failed to prove that the City wrongfully terminated his employment was essentially a finding and conclusion that he failed to meet his threshold burden of proof of causation of damages on his DFR claim. Contrary to Folsom's assertion, the court's conclusion was not a *sua sponte* interjection of an unpled affirmative defense; it was a

---

[8] A union is jointly and severally liable with the employer for lost wages caused by a wrongful termination if the union affirmatively caused or colluded with the employer to discharge the employee in violation of the collecting bargaining agreement. *Vaca*, 386 U.S. at 197-98, n.18, 97 S. Ct. at 920-21; *Czosek*, 397 U.S. at 29, 90 S. Ct. at 773.

[9] In effect, a union's subsequent breach of the duty is not an unforeseeable independent intervening cause that, as a matter of law, cuts off the employer's antecedent liability for the employer's own independent breach of duty. *See, e.g.*, *Larchick v. Diocese of Great Falls-Billings*, 2009 MT 175, ¶¶ 49-50, 350 Mont. 538, 208 P.3d 836; *Cusenbary v. Mortenson*, 1999 MT 221, ¶¶ 23-29, 296 Mont. 25, 987 P.2d 351; *Sizemore v. Montana Power Company*, 246 Mont. 37, 41-48, 803 P.2d 629, 632-36 (1990).

[10] However, a union may be liable for a portion of the employee's lost wages upon non-speculative proof of a point in time after which the grievance procedure would otherwise have resulted in reinstatement of the employee but for the union's breach of duty. *See Bowen v. U.S. Postal Service*, 459 U.S. 212, 222-24, 103 S. Ct. 588, 594-95 (1983) (affirming apportionment of lost wages based on hypothetical reinstatement date).

judgment rendered on an issue squarely before it on the claim pled. Further, though he presented evidence that MPEA's breach of duty caused him to incur attorney fees and costs in excess of lost wages, Folsom presented no evidence or argument at the post-summary judgment evidentiary hearing to satisfy his burden of proving that the City terminated his employment in violation of the CBA.

¶35 The Rule 56 record was similarly insufficient to establish proof of causation. Folsom did not seek, and the District Court did not grant, summary judgment on the causation or damages elements of his DFR claim. He merely sought and obtained summary judgment that MPEA breached its duty of fair representation, committed fraud, and was liable for damages to be proven later. The issue of whether the City wrongly terminated his employment in violation of the CBA was not properly before the court on the summary judgment record. MPEA thus had no responsive Rule 56(e)(2) burden to raise a genuine issue of material fact to defeat Folsom's cursory assertion that the City terminated him in violation of the CBA. Folsom further presented no authority for the proposition that a district court must or may take judicial notice of facts on the Rule 56 record as evidence in a subsequent evidentiary hearing absent a prior adjudication of those facts pursuant to Rule 56(c)(3) and (d)(1) (adjudication of established facts not subject to genuine material dispute on Rule 56 record).

¶36 Contrary to Folsom's further assertion, the terms of his settlement agreement with the City did not preclude a factual question as to whether the City discharged him in violation of the CBA. The agreement affirmatively acknowledged the right and duty of City witnesses to subsequently testify under process as to the facts and circumstances of

20

Folsom's discharge. The agreement expressly disclaimed any City liability or wrongdoing and fully discharged and released the City without compensation to Folsom.

¶37 Folsom's assertion that MPEA judicially admitted to causation on his DFR claim is similarly unsound. A judicial admission is an express waiver made to the court by a party or counsel conceding the truth of an alleged fact for purposes of trial. *Bilesky v. Shopko Stores Operating Co., LLC*, 2014 MT 300, ¶ 12, 377 Mont. 58, 338 P.3d 76. "Judicial admissions have the effect of stipulations" and have "conclusive effect" on "the party making the admission," thus precluding presentation of further evidence to prove, disprove, or contradict the admitted fact. *Bilesky*, ¶ 12. Judicial admissions apply only to statements of fact, not statements of opinion or law. *Bilesky*, ¶ 13. Whether a court should view a party's statement or assertion of fact as a judicial admission is a question of law dependent on whether giving it conclusive effect will (1) "facilitate judicial efficiency and save the parties time, labor, and expense" and (2) "protect the integrity of the judicial process by preventing parties from unfairly playing fast and loose with the facts to suit the exigencies of self-interest." *Bilesky*, ¶ 20.

¶38 In its answer to Folsom's complaint, MPEA admitted that the City discharged him without just cause in violation of the CBA. While the existence of a legal duty is a question of law, whether a party breached a legal duty is generally an ultimate question of fact. *Garza v. Forquest Ventures, Inc.*, 2015 MT 284, ¶ 38, 381 Mont. 189, 358 P.3d 189. In that regard, out of context, MPEA's pleading admission was seemingly an assertion of ultimate fact. However, in context, Picotte made the admission, however unnecessarily or improvidently, only in response to the wrongful discharge claim pled *against the City*. In

response to the DFR claim against MPEA, its answer generally denied, with exceptions not pertinent here, Folsom's pertinent factual averments and affirmatively prayed that he "take nothing" against MPEA.

¶39 Just as plaintiffs may plead inconsistent claims for relief, defendants may plead inconsistent defenses. M. R. Civ. P. 8(d)(3). In accordance with its duty to fairly represent Folsom and consistent with the position previously taken on Folsom's behalf during the CBA grievance process, MPEA made its seemingly adverse pleading admission in alignment with Folsom's breach of contract claim against the City. However, in defense of itself, MPEA pled a seemingly inconsistent general denial in response to the DFR claim. Read as a whole in context, MPEA's pleading admission in response to the claim pled against the City was not an adverse admission to the DFR claim pled against MPEA.

¶40 As an admission in response to Folsom's claim *against the City*, MPEA's pleading admission was also more akin to a preliminary statement of opinion based on anticipated proof than an express waiver or concession of an adverse material fact. *See Weaver v. State*, 2013 MT 247, ¶¶ 24-25, 371 Mont. 476, 310 P.3d 495 (statement in brief that State "acted reasonably" in fighting a fire merely a preliminary assertion based on anticipated proof); *DeMars v. Carlstrom*, 285 Mont. 334, 338, 948 P.2d 246, 249 (1997) (defendant's cross-exam testimony that accident was all her fault not a judicial admission but merely an expression of her personal opinion based on facts within her personal knowledge). Under these circumstances, giving the statement conclusive effect against MPEA was not necessary to promote judicial economy or to protect the integrity of the judicial process. Therefore, the District Court did not err in failing to give conclusive effect to MPEA's

pleading admission. We hold that, on the state of the record before it, the District Court correctly concluded that Folsom did not meet his burden of proving that MPEA's breach of duty caused his claimed damages. Thus, we hold that the District Court did not err in declining to grant Folsom's alternative motion for post-judgment relief under Rules 59(a)(2) and 60(b)(1) and § 25-11-102(3), MCA.[11]

¶41   *3. Did the District Court erroneously award attorney fees to Folsom as an element of compensatory damages on his DFR claim?*

¶42   Whether a party may recover attorney fees as an element of compensatory damages is a matter of law. *Jacobsen v. Allstate Ins. Co.* (*Jacobsen I*), 2009 MT 248, ¶ 17, 351 Mont. 464, 215 P.3d 649. The District Court awarded Folsom $47,550 as compensation for attorney fees incurred in prosecuting this action pursuant to *Dutrisac*, 749 F.2d at 1275-76. The court reasoned that MPEA's failure to fairly represent him "in the grievance proceeding forced Folsom to hire a lawyer in order to obtain representation that the MPEA should have provided in the first place." Pursuant to *Petaja v. Montana Public Employees' Ass'n*, 2016 MT 143, 383 Mont. 516, 373 P.3d 40, MPEA asserts that a plaintiff may not recover attorney fees as compensatory damages on a DFR claim. Folsom asserts that MPEA procedurally waived any substantive objection to the attorney fees award by failing to challenge it before the District Court. Since MPEA raised this issue before the District Court in its motion for post-judgment relief, Folsom's procedural argument turns on our resolution of Issue 6. We address MPEA's assertion of substantive error here.

---

[11] However, as a necessary incident of our holding on Issue 6, Folsom will yet have the opportunity on remand to satisfy his burden of proving the essential elements of his DFR claim.

23

¶43 Under the common law "American Rule," the prevailing party is not entitled to recover attorney fees incurred in prosecuting or defending an action unless otherwise expressly provided by contract or statute. *Petaja*, ¶ 25; *Schuff v. A.T. Klemens & Son*, 2000 MT 357, ¶ 97, 303 Mont. 274, 16 P.3d 1002. The essence of the American Rule is that each party to a dispute "pays its own attorney fees." *Chase v. Bearpaw Ranch Ass'n*, 2006 MT 67, ¶ 29, 331 Mont. 421, 133 P.3d 190. We have consistently construed the American Rule to preclude not only same-suit fee shifting, but to also preclude recovery of attorney fees incurred in a prior dispute but claimed as compensatory damages, or as a new exception to the American Rule, in a subsequent action *between the same parties*. *E.g.*, *Jacobsen I*, ¶¶ 19-23; *Petaja*, ¶¶ 25-26.

¶44 In *Jacobsen I*, an insurer refused to rescind a premature settlement of a third-party automobile liability claim until after the injured party retained and pressed the issue through counsel. *Jacobsen I*, ¶ 2. Upon finding the insurer liable on the third party's ensuing common law bad faith claim, the jury awarded compensatory damages that included the cost of attorney fees previously incurred by the third party to force the insurer to re-open and re-adjust the claim prior to the bad faith litigation. *Jacobsen I*, ¶ 6. In the absence of a contract or statutory attorney fees provision, we reversed the attorney fees award on the grounds that no recognized exception to the American Rule applied, recognition of a new exception for third-party common law bad faith claims would be inconsistent with the Legislature's failure to provide similar relief on statutory bad faith claims, and in deference to the Legislature's prerogative "to rectify" any such "unfair gap in existing law." *Jacobsen I*, ¶¶ 19-23.

¶45 In *Petaja*, after her public employer terminated and then temporarily reinstated her in a lesser position with a substantial pay cut, an employee asserted an age discrimination claim against the employer and a DFR claim against her union (MPEA). *Petaja*, ¶¶ 4-8. The employee claimed the union breached its duty of fair representation by unilaterally settling her grievance after the employer reassigned her. *Petaja*, ¶¶ 6-8. At trial, the jury determined the discrimination claim against the employer was time-barred but returned a $100,000 verdict against MPEA on the DFR claim. *Petaja*, ¶ 10. Pursuant to *Jacobsen I* and despite the union's "incomprehensible [default] admission" to an attorney fees award, we affirmed the District Court's denial of the employee's post-trial motion for attorney fees absent a contract or statutory attorney fees provision, an applicable recognized exception to the American Rule, or a showing of sufficient cause to recognize a new exception. *Petaja*, ¶¶ 25-26. To preserve it as "a foundation of our jurisprudence," we must continue to broadly construe the American Rule to avoid its consumption by a multitude of exceptions. *Jacobsen I*, ¶ 23; *Petaja*, ¶¶ 25-26.

¶46 However, without offense to the American Rule, attorney fees and costs incurred in legal action *against a third party* may be a permissible element of compensatory damages in an action *against a tortfeasor* where the tortfeasor's conduct caused the plaintiff to have to resort to legal action to protect his or her interests against the third party. *Restatement (Second) of Torts* § 914(2) (1979). *See also*, Annotation, *Right to Recover Attorney's Fees Incurred in Earlier Litigation with a Third Person Because of Involvement Therein Through a Tortious Act of Present Adversary*, 45 A.L.R.2d 1183 (1956 & Supp. 2015). Recovery of attorney fees in this limited context does not violate or undermine the

American Rule because the recovery does not constitute a direct or indirect shifting or allocation of attorney fees between the same litigating parties. Thus, federal and state courts have long recognized that, as an element of compensatory damages on a DFR claim, an employee may recover attorney fees and costs incurred to enforce the employee's collective bargaining agreement rights *against an employer* if incurred as a result of the union's failure to represent the employee in breach of its duty of fair representation. *Dutrisac*, 749 F.2d at 1275-76 (requiring union to compensate employee for cost of representation union failed to provide not contrary to American Rule); *Rogers v. Int'l Air Line Pilots Ass'n*, 988 F.2d 607, 616 (5th Cir. 1993) (distinguishing American Rule-barred recovery of fees incurred in prosecuting DFR claim against union from permissible recovery of attorney fees from union as costs incurred in action against employer); *Seymour v. Olin Corp.*, 666 F.2d 202, 212-15 (5th Cir. 1982); *Scott v. Int'l Bhd. of Teamsters Local 377*, 548 F.2d 1244, 1246 (6th Cir. 1977); *Int'l Bhd. of Elec. Workers Local 1547 v. Lindgren*, 985 P.2d 451, 455-57 (Alaska 1999) (attorney fees and costs incurred pursuing claims against employer is "fair measure" of "uncompensated damages" caused by union breach of fair representation). *See also*, *Czosek*, 397 U.S. at 29, 90 S. Ct. at 773 ("damages against the union for loss of employment are unrecoverable except to the extent" that its breach "added to the difficulty and expense of collecting from the employer").

¶47 Accordingly, we affirm our holding in *Petaja* that the American Rule precludes an award or recovery of attorney fees incurred by an employee in the prosecution of a DFR claim against a union. However, we distinguish *Petaja* and clarify that the American Rule does not bar an employee from recovering, as an element of compensatory damages on a

DFR claim against a union, attorney fees incurred by the employee to enforce grievance rights *against an employer* if caused by the union's breach of its duty of fair representation. Where, as here, the employee asserts a claim against the employer on the contract and a DFR claim against the union in the same action, the employee has the burden of proving the amount of attorney fees incurred in prosecuting the claim against the employer, as distinct from those incurred in prosecuting the DFR claim against the union.

¶48 As an element of compensatory damages on his DFR claim against MPEA, Folsom can recover attorney fees and costs incurred in pressing his wrongful discharge claim against the City upon proof that: (1) MPEA breached its duty of fair representation; (2) the City wrongfully discharged him in violation of the CBA; and (3) the union's breach caused him to incur attorney fees and costs to enforce his CBA rights against the City. However, in the manifest absence of a contrary statutory or contract provision or an applicable exception to the American Rule, he cannot recover attorney fees incurred in prosecuting claims against MPEA. The District Court awarded Folsom $47,550 as compensation for attorney fees incurred in prosecuting this action despite his adjudicated failure to meet his burden of proving that the City discharged him in violation of the CBA and without distinction between fees incurred in prosecuting his claim against the City and those incurred in prosecuting his claims against MPEA. Under these circumstances, we hold that the District Court erred in awarding Folsom $47,550 in attorney fees.

27

¶49    *4. Are punitive damages recoverable absent a compensatory damages award on a predicate claim for relief?*

¶50    Whether a party may recover punitive damages absent a compensatory damages award on a predicate claim is a matter of law. In contemplation of this issue, the District Court, citing *Weinberg v. Farmers State Bank*, 231 Mont. 10, 31, 752 P.2d 719, 732 (1988), ruled that even if Folsom "is not entitled to his attorney fees . . . as an element of damages, punitive damages may be awarded where the plaintiffs [are] granted only nominal damages." This issue is before us by necessary implication from the District Court's ruling, the broad swath of the parties' contentions on appeal, and our holdings on attorney fees, punitive damages, and related matters warranting remand on appeal.

¶51    The finder of fact may award punitive damages "*in addition to compensatory damages*." Section 27-1-220(1), MCA (emphasis added). In accordance with this express statutory language, we have held that punitive damages are not available as a matter of law absent an award of compensatory damages on a predicate cause of action from which the actual malice or actual fraud arose. *Jacobsen I*, ¶ 67; *Stipe v. First Interstate Bank-Polson*, 2008 MT 239, ¶ 23, 344 Mont. 435, 188 P.3d 1063; *see also*, *Penn v. Burlington Northern, Inc.*, 185 Mont. 223, 231, 605 P.2d 600, 605 (1980) (pre-1987 amendment of §§ 27-1-220 and -221, MCA—punitive damages unavailable absent actual damages); *Paulson v. Kustom Enterprises, Inc.*, 157 Mont. 188, 201-02, 483 P.2d 708, 715-16 (1971) (discussing inconsistent jurisprudence prior to 1987 amendment of §§ 27-1-220 and -221, MCA); *Gilham v. Devereaux*, 67 Mont. 75, 214 P. 606 (1923) (under pre-1985 codified common law punitive damages standard), *overruled*, *in part*, *by Fauver v. Wilkoske*, 123 Mont. 228,

28

238-39, 211 P.2d 420, 425-26 (1949). Under an older line of authority, construing "nominal damages" as a form of "actual damages" under prior statutory language, we have contrarily held that punitive damages *were* available in the absence of compensatory damages upon a proof of "nominal damages" characterized as a "substantial injury" not readily "susceptible of measurement by a money standard." *Long v. Davis*, 68 Mont. 85, 217 P. 667 (1923). *See also*, *Weinberg*, 231 Mont. at 31, 752 P.2d at 732; *Lauman v. Lee*, 192 Mont. 84, 89-90, 626 P.2d 830, 833 (1981); *Butcher v. Petranek*, 181 Mont. 358, 364, 593 P.2d 743, 746 (1979); *Miller v. Fox*, 174 Mont. 504, 510, 571 P.2d 804, 808 (1977); *Fauver*, 123 Mont. at 238-39, 211 P.2d at 425-26.

¶52 However, we decided our *Long-Weinberg* line of cases under prior versions of §§ 27-1-220 and -221, MCA, that made punitive damages available "in addition to *actual damages*." Section 27-1-221(1), MCA (1985) (emphasis added). In 1987, the Legislature amended §§ 27-1-220 and -221, MCA, to allow punitive damages "in addition to *compensatory damages*." Section 27-1-220(1), MCA (emphasis added). Thus, our *Long-Weinberg* line of cases allowing punitive damages based on "nominal damages" has been superseded by statute and is no longer of consequence. Here, the erroneous attorney fee award was the only element of compensatory damages awarded to Folsom. Absent a valid compensatory damages award, punitive damages were unavailable to Folsom as a matter of law pursuant to § 27-1-220(1), MCA. We hold that the District Court erroneously

awarded punitive damages without a compensatory damages predicate as required by § 27-1-220(1), MCA.[12]

¶53    *5.  Are punitive damages recoverable against a union predicated on a Montana DFR claim?*

¶54    Pursuant to § 27-1-221(1) and (6), MCA, the District Court granted summary judgment that MPEA was liable for punitive damages on the ground that Picotte's misrepresentations to Folsom regarding the fictitious district court enforcement action constituted both common law fraud and "actual fraud," as defined by § 27-1-221(3) and (4), MCA.  Our determination that Folsom's separately pled common law fraud claim is subsumed in his DFR claim elevates the significance of the parties' secondary cross-contentions on that issue as to whether the rule of *Foust*, 442 U.S. at 52, 99 S. Ct. at 2128 (per se bar on recovery of punitive damages on DFR claims), bars recovery of punitive damages on DFR claims under Montana law.

¶55    Implied from their pivotal role as the exclusive bargaining agents of employees under the federal Railway Labor Act (RLA) and National Labor Relations Act (NLRA), labor unions subject to the RLA and NLRA have a federal common law duty to fairly

---

[12] Though we take no position at this juncture, this holding may necessarily implicate a related issue for consideration on remand.  Punitive damages are available under Montana law only when "*the defendant* has been found *guilty* of actual fraud or actual malice."  Section 27-1-221(1), MCA (emphasis added).  Sections 27-1-220 and -221, MCA, do not expressly address whether and when a principal may be vicariously liable for actual fraud or actual malice committed by the principal's agent.  Restatement (Second) of Torts § 909 (1979) addresses when a principal may be sufficiently culpable to be vicariously liable for punitive damages based on the conduct of an agent.  *See* similarly, *Campen v. Stone*, 635 P.2d 1121, 1123-26 (Wyo. 1981).  While this Court has yet to squarely reconcile it with § 27-1-221(1), MCA, we have applied Restatement § 909 where assumed by the parties to be consistent with Montana law.  *Cartwright v. Equitable Life Ins.*, 276 Mont. 1, 30-33, 914 P.2d 976, 994-96 (1996).

represent all members in the enforcement of grievance rights provided by collective bargaining agreements. *Foust*, 442 U.S. at 47, 99 S. Ct. at 2125; *Vaca*, 386 U.S. at 177-78, 87 S. Ct. at 909-10; *Ford Motor Co. v. Huffman*, 345 U.S. 330, 337, 73 S. Ct. 681, 686 (1953) (NLRA); and *Woods*, 925 F.2d at 1203 (citing *Steele v. Louisville & Nashville R.R. Co.*, 323 U.S. 192, 204, 65 S. Ct. 226, 232 (1944) (RLA)). A union breaches the duty if it handles an employee grievance in a fraudulent, bad faith, or grossly negligent manner or with arbitrary or unlawful disregard or discrimination. *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Employees*, 403 U.S. at 299, 91 S. Ct. at 1924; *Vaca*, 386 U.S. at 190, 87 S. Ct. at 916-17; *Woods*, 925 F.2d at 1203. Thus, independent of administrative remedies available under the RLA and NLRA, the U.S. Supreme Court recognized a DFR claim as an independent federal common law tort claim to provide a remedy for individual employees in the event that a union fails to represent them fairly, impartially, and in good faith without arbitrary or unlawful discrimination. *Foust*, 442 U.S. at 47-49, 99 S. Ct. at 2125-26; *Vaca*, 386 U.S. at 190, 87 S. Ct. at 916; *Woods*, 925 F.2d at 1203. Attempting to balance the purpose of federal labor law to protect and maintain the vitality of labor unions as the guardians of employee rights with the potentially competing public policy interest in providing individual workers with a remedy for union misconduct, the U.S. Supreme Court has decreed, as a matter of federal common law, that punitive damages are not available on federal DFR claims. *Foust*, 442 U.S. at 46-52, 99 S. Ct. at 2124-28. Though effectively limited in application, *see, e.g.*, *Woods*, 925 F.2d at 1204-06 (noting availability of punitive damages against unions under other federal labor laws and holding that *Foust*

31

did not preclude punitive damages where independently available on co-pled federal civil rights claim), the rule of *Foust* has stood without Congressional intercession since 1979.

¶56 As defined by § 39-31-103(6), MCA, MPEA is a union of state and local public employees subject to the Montana Public Employees Collective Bargaining Act (MPECBA). Title 39, chapter 31, MCA. The U.S. Supreme Court did not decide *Foust* on federal constitutional grounds. *Foust*, 442 U.S. at 46-52, 99 S. Ct. at 2124-28. Moreover, the NLRA and RLA, from which federal DFR claims derive, do not apply to unions of state and local government employees. *See* 29 U.S.C. §§ 152(2), (6) and (7) and 160(a) (NLRA); 45 U.S.C. §§ 151-53 (RLA). Though modeled on federal DFR claims based on the similarity of MPECBA to corresponding provisions of the NLRA and RLA, *Teamsters II*, 223 Mont. at 95-96, 724 P.2d at 193; *Teamsters I*, 195 Mont. at 274-78, 635 P.2d at 1311-13; *Ford*, 183 Mont. at 118-23, 598 P.2d at 607-10, our Montana common law DFR claims derive exclusively from §§ 39-31-103(4), -205, -206(1), -305(1), and -309(2), MCA (exclusive bargaining agent duty to represent interests of all employees without discrimination). Though persuasive guidance where consistent with Montana law and public policy, *see Teamsters I*, 195 Mont. at 275, 635 P.2d at 1312, the rule of *Foust* is not binding authority on Montana DFR claims.

¶57 We have not previously had occasion to consider whether *Foust*'s per se ban on punitive damages comports with Montana law and public policy. Because we are reversing Folsom's punitive damages award on other grounds, it is not necessary for us to reach and resolve this issue at this time.

¶58     6.   *Did the District Court erroneously deny MPEA's motions for post-judgment relief under M. R. Civ. P. 59(e) and 60(b)(6)?*

¶59     M. R. Civ. P. 59(e) contemplates motions to alter or amend judgments in the interests of justice but specifies no particular grounds for relief.  *Lee*, ¶¶ 71-72 (distinguishing Rule 59 motion for a new trial from motion to alter or amend non-trial judgment).  We have held, however, that Rule 59(e) relief is not available to relitigate previously litigated matters, reconsider arguments previously made, or raise new arguments "which could, and should, have been" previously made. *Lee*, ¶ 76 (citing *Nelson v. Driscoll*, 285 Mont. 355, 360-61, 948 P.2d 256, 259 (1997)).  Rule 59(e) relief is available in the discretion of the court only in extraordinary circumstances such as to: (1) "correct manifest errors of law or fact upon which the judgment was based;" (2) "raise newly discovered or previously unavailable evidence;" (3) "prevent manifest injustice resulting from, among other things, serious misconduct of counsel;" or (4) "bring to the court's attention an intervening change in controlling law." *Lee*, ¶ 75 (citing *Nelson*, 285 Mont. at 360, 948 P.2d at 259).  The standard of review for a denial of a motion for Rule 59(e) relief is whether the district court abused its discretion. *Bevacqua v. Union Pac. R.R. Co.*, 1998 MT 120, ¶ 36, 289 Mont. 36, 960 P.2d 273.

¶60     In contrast to Rule 59(e), M. R. Civ. P. 60(b)(6) provides for relief "from a final judgment, order, or proceeding" when required by fairness or equity to remedy a lack of "full presentation of the cause or an accurate determination of the merits" caused by extraordinary circumstances other than the grounds for relief specified in Rule 60(b)(1) through (b)(5). *In re Marriage of Orcutt*, 2011 MT 107, ¶¶ 9-11, 360 Mont. 353, 253 P.3d

884.[13]  Like Rule 59(e) relief, Rule 60(b)(6) relief is not a substitute for appeal, is not available for reconsideration of matters previously considered, and is not available for consideration of new matters that reasonably could and should have been previously raised. *Orcutt*, ¶ 11.  Rule 60(b)(6) relief is available to remedy alleged neglect or misconduct by a party's counsel only upon a showing:  (1) of extraordinary gross neglect or actual misconduct by counsel; (2) that the party sought relief within a reasonable time; and (3) that the moving party was not at fault for the alleged neglect or misconduct.  *Orcutt*, ¶ 12.  The standard of review of a grant or denial of a motion for Rule 60(b) relief based on alleged gross neglect or misconduct of counsel is whether the district court abused its discretion. *Orcutt*, ¶ 5.

¶61     Here, MPEA alternatively moved the District Court for Rule 59(e) or 60(b)(6) relief from its summary judgment rulings and its resulting compensatory attorney fees and punitive damage awards.  MPEA sought relief under both rules on the asserted ground that the liability judgments and resulting damages awards were based on manifest errors of law and fact resulting from the "gross neglect and misconduct" of its former counsel.  MPEA asserted that counsel's gross neglect and misconduct effectively caused it to suffer a default

---

[13] Rule 60(b) provides:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:  (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

judgment on liability which, in turn, became the basis of the erroneous compensatory and punitive damage awards.

¶62 MPEA retained new counsel after the damages hearing and shortly before the District Court issued its post-summary judgment order on damages. MPEA timely asked the District Court to delay its damages ruling to afford MPEA an opportunity to file an appropriate motion for relief. After the District Court issued its damages ruling in apparent disregard of MPEA's initial motion, MPEA moved for particularized post-judgment relief with supporting affidavits, exhibits, and briefing.

¶63 The record reflects that MPEA's counsel seriously compromised its litigation posture on the merits by failing to respond to critical requests for admission, failing to subsequently seek relief from the resulting admissions deemed by default, and failing to make any affirmative factual showing to oppose Folsom's motion for summary judgment. Though he appeared at the subsequent damages hearing, counsel manifestly made no competent attempt to effectively represent MPEA's interests through briefing, oral argument, or motion practice. He failed to present critical legal authority and argument opposing Folsom's claims, to present proposed findings of fact and conclusions of law, or to seek relief from his earlier neglect.

¶64 MPEA made a prima facie showing that it was not substantially at fault for Picotte's neglect or misconduct under the circumstances. Apart from general assertions that MPEA had knowledge that Picotte was "burnt-out" and that MPEA could and should have more closely supervised him and acted sooner, Folsom made no compelling showing of specific contributory fault by MPEA.

¶65    Under these circumstances, MPEA made a reasonably diligent and compelling showing for post-judgment relief under Rules 59(e) and 60(b)(6). From the outset of this litigation, Folsom asserted that the City wrongfully terminated his employment in violation of the CBA. The alleged breach of the CBA by the City was also at the core of Folsom's ancillary DFR and subsumed common law fraud claims. Yet, seizing the opportunity to exploit the manifest extraordinary gross neglect of MPEA's counsel, Folsom made the tactical decision to release the alleged primary wrongdoer, without compensation or admission of liability, to instead pursue the compromised MPEA for the entirety of his asserted compensatory and punitive damages. Under the totality of the circumstances, this was truly an extraordinary situation where fundamental fairness and equity warranted relief under Rule 59(e) or 60(b)(6) to remedy a lack of full presentation and inaccurate determination of the merits as a result of the extraordinary gross neglect of counsel. We hold that the District Court abused its discretion in refusing to grant MPEA's alternative motion for relief from its summary judgment and resulting attorney fees and punitive damage awards.

## CONCLUSION

¶66    In summary, we hold that: (1) Folsom's separately pled common law fraud claim is necessarily subsumed in his DFR claim and thus not independently cognizable in this case; (2) the District Court's ruling that Folsom did not meet his burden of proving that MPEA's breach of duty caused his claimed damages was not erroneous and, thus, the District Court did not err in declining to grant his motion for post-judgment relief under Rules 59(a)(2) and 60(b)(1) and § 25-11-102(3), MCA; (3) the District Court erred in

36

awarding Folsom $47,550 in attorney fees; (4) the District Court erroneously awarded punitive damages without a compensatory damages predicate as required by § 27-1-220(1), MCA; and (5) the District Court abused its discretion in refusing to grant MPEA's alternative Rule 59(e) or 60(b)(6) motion for relief from its summary judgment and resulting attorney fees and punitive damage awards. We therefore reverse the District Court's *Order on Plaintiff's Motion for Summary Judgment*, filed July 15, 2015, and its subsequent *Findings of Fact*, *Conclusions of Law*, *and Order on Damages*, filed March 16, 2016, and remand for further proceedings on the merits of Folsom's DFR claim in accordance with this Opinion.

¶67 This remand necessarily returns Folsom and MPEA to the procedural posture that they were in upon Folsom's service of discovery requests on MPEA. Accordingly, MPEA shall timely respond to Folsom's previously propounded discovery requests within 30 days of remand. On M. R. Civ. P. 16 motion, the District Court shall confer with the parties and set a litigation schedule providing, *inter alia*, for any additional discovery necessary in the discretion of the court, pretrial motion practice, and, as necessary, trial on the merits. In the ordinary course, the District Court may or may not allow amendment of the pleadings in its discretion under M. R. Civ. P. 15.

/S/ DIRK M. SANDEFUR

We concur:

/S/ MICHAEL E WHEAT
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ JIM RICE

37

Justice Dirk Sandefur, specially concurring.

¶68    I obviously concur in all aspects of the Court's Opinion as far as it goes.  Because I believe the issue is squarely before us by necessary implication from the District Court's ruling and the parties' cross-arguments on Issues 1 and 6, it is incumbent on us to reach and resolve Issue 5 rather than merely kick the can down the road without guidance on remand to the District Court and the litigating parties.  Therefore, pursuant to § 3-2-204(3), MCA (in reversing and remanding this "court *must* pass upon and determine all the questions of law involved in the case presented upon such appeal *and necessary to the final determination of the case*") (emphasis added), I would further reach and resolve Issue 5 as follows.

¶69    Though we have not previously had occasion to consider whether *Foust*'s per se ban on punitive damages comports with Montana law and public policy, the New Mexico Supreme Court has considered whether to apply the rule of *Foust* to New Mexico common law DFR claims based on a state Public Employees Bargaining Act (NMPEBA) similar to MPECBA.  *Akins v. U.S.W., Local 187*, 237 P.3d 744 (N.M. 2010).  In *Akins*, a city motor vehicle shop worker, who was the lone African-American member of the public employees union local, asserted a state common law DFR claim against the union after union officials refused his repeated requests to file a grievance to stop racial slurs and discrimination directed at him by largely Hispanic co-workers and supervisors.  *Akins*, 237 P.3d at 746.  After the New Mexico Court of Appeals affirmed a jury verdict awarding $1,661 in compensatory damages and $30,000 in punitive damages, the New Mexico Supreme Court considered the union's assertion that, based on *Foust*'s compelling public policy

considerations, New Mexico should adopt a similar "per se ban on punitive damages" on its state common law DFR claims. *Akins*, 237 P.3d at 747. After careful consideration of a wide range of federal and state public policy concerns, the New Mexico Court ultimately affirmed the ruling of its intermediate Court of Appeals and rejected adoption of the rule of *Foust* as contrary to New Mexico law and public policy. *Akins*, 237 P.3d at 747-54.

¶70    The New Mexico Supreme Court acknowledged without dispute the U.S. Supreme Court's "assessment of national needs" and the policy and purpose of federal labor laws to protect and maintain the vitality of private sector labor unions. *Akins*, 237 P.3d at 749. As to the U.S. Supreme Court's particular concern that "windfall recoveries against labor unions could deplete union treasuries and impair the effectiveness of unions as collective bargaining agents," the New Mexico Court observed that:

> nothing . . . indicates that such fears are presently warranted in New Mexico's public sector. Despite *Foust's* holding in the DFR context, unions . . . are currently subject to punitive damages under a variety of federal laws, such as the Labor Management Reporting and Disclosure Act (LMRDA) and 42 U.S.C. § 1981 (2006). *See* 29 U.S.C. §§ 411(a)(4), 412 (2006) (right to sue and civil action/jurisdiction provisions of the LMRDA); *Int'l Bhd. of Boilermakers v. Braswell*, 388 F.2d 193, 200 (5th Cir. 1968) (punitive damages available under LMRDA); *Woods*, 925 F.2d at 1204 ("Under § 1981, the common law rule is that punitive damages may be awarded in appropriate cases."). Unions have also, up to now, been subject to punitive damages for breach of the state duty of fair representation. Thus, to adopt a per se ban here would be to *depart* from the status quo. Despite the potential for exposure to punitive damages from several angles, the Union cannot point to a single example where runaway punitive damages awards substantially debilitated a labor union in New Mexico.

*Akins*, 237 P.3d at 750 (emphasis original). The New Mexico Court further noted that the compelling public policy concern "for the vitality of unions as collective bargaining agents" of workers is already reflected in a higher standard of DFR liability which "shields"

39

unions from liability "for merely negligent" conduct "at no small cost" to the subordinated interests of individual union members. *Akins*, 237 P.3d at 749. "To now go further and shield even the most egregious conduct from punitive damages, would . . . undermine the interests of both Unions and their members." *Akins*, 237 P.3d at 749.

¶71    Contrasting federal policy to state policy, the New Mexico Court observed that "*Foust* was developing an area of interstitial federal common law to effectuate distinct congressional goals set forth in federal statutes governing unions in the private sector." *Akins*, 237 P.3d at 749 (citing *Foust*, 442 U.S. at 47-48, 99 S. Ct. at 2125-26 and *Woods*, 925 F.2d at 1203). The Court acknowledged that New Mexico DFR claims further a similar state policy as enacted in NMPEBA, but noted that the primary purpose of federal and state common law DFR claims is to provide individual workers an effective remedy for enforcement of collective bargaining rights not otherwise provided by statute. *Akins*, 237 P.3d at 749. To that end, the New Mexico Court agreed with the concurrence in *Foust* that recognition of a common law enforcement remedy for that purpose should avail the enforcing party of "the full panoply of tools traditionally" available at common law "to do justice between the parties," including punitive damages. *Akins*, 237 P.3d at 749 (citing *Foust*, 442 U.S. at 53, 99 S. Ct. at 2128 (Blackmun, J., concurring)). The New Mexico Court concluded that existing procedural, substantive, and constitutional due process protections are more than adequate to protect unions, like other tortfeasors, from excessive punitive damages awards. *Akins*, 237 P.3d at 752-54.

¶72    Turning to other provisions of state law, the New Mexico Court noted that punitive damages serve the important state public policy of punishing reprehensible conduct and

deterring similar conduct in the future. *Akins*, 237 P.3d at 749-50. The court noted that those policy objectives are of particular critical import "where unions appropriately enjoy broad discretionary authority and the employee has little recourse outside of the grievance process." *Akins*, 237 P.3d at 749-50. The New Mexico Court thus concluded that "punitive damages are the best means of deterring" egregious union misconduct in the DFR context where "compensatory damages may be *de minimis* or difficult to quantify." *Akins*, 237 P.3d at 750.

¶73 Ultimately, the Court noted that "New Mexico law reflects a preference for holding individuals and institutions accountable for their actions regardless of status." *Akins*, 237 P.3d at 751. "[W]e are aware of no New Mexico common-law cause of action in tort where we have [declared] that punitive damages are unavailable as a matter of law." *Akins*, 237 P.3d at 752. "Absent a more compelling policy consideration than that presented by the Union, we make no exception for DFR claims." *Akins*, 237 P.3d at 752. The New Mexico Court instead adhered "to the general common law principle in New Mexico that punitive damages should be available as long as the wrongdoer's conduct is willful, wanton, malicious, reckless, fraudulent, or in bad faith." *Akins*, 237 P.3d at 752. Because "the Legislature is capable of making exceptions to general tort principles when public policy so counsels," the Court deferred "to the Legislature for such a drastic departure" from existing state law and public policy, if so inclined. *Akins*, 237 P.3d at 751.

¶74 I find *Akins'* reasoning even more compelling under Montana law and public policy considerations. By following the federal model and consistent with the public policy of MPECBA to provide for the continued vitality of public employees' unions, we, too, have

41

adopted a higher standard of liability that shields public employees' unions from liability for merely negligent conduct, thus subordinating the interests of individual workers to those of the union collective. However, on balance with MPECBA's important public policy of facilitating effective collective bargaining in the public sector, Montana statutory and common law embodies an equally important policy of holding individuals and entities accountable for their tortious conduct regardless of status. To that end, punitive damages are available in Montana "for the sake of example and for the purpose of punishing" defendants who engage in "actual fraud" or "actual malice," as narrowly defined. Sections 27-1-220(1) and -221(1), MCA.

¶75 The Legislature has mandated that punitive damages are available as a supplemental tort remedy "[e]xcept as otherwise *expressly* provided by statute." Section 27-1-220(1), MCA (emphasis added). While this Court is certainly free to fashion the contours of Montana DFR claims absent contrary statutory provision, *see Miller v. Fallon County*, 222 Mont. 214, 217-18, 721 P.2d 342, 344 (1986) (judicial discretion to determine or revise common law as necessary "to prevent great injustice" or conform common law to "changing needs of society"); *accord*, *Brookins v. Mote*, 2012 MT 283, ¶ 57, 367 Mont. 193, 292 P.3d 347; § 1-1-108, MCA (common law is "the law and rule of decision" except where in conflict with statute), our adoption of a per se Montana common law rule barring punitive damages as a supplemental remedy on a DFR claim would contravene the unqualified mandate of § 27-1-220(1), MCA, that punitive damages are an available supplemental tort remedy except as otherwise expressly provided by statute.

¶76    As in *Akins*, the assertion that punitive damages exposure will weaken unions is no

more valid in regard to unions than to other benevolent entities subject to punitive damages

liability.   Punitive damages awards are subject to federal due process limitations and

various procedural and substantive protections and limitations provided by §§ 27-1-220

and -221, MCA.   Since 1985, Montana has had an even higher standard of punitive

damages liability than the common law standard articulated in *Akins*.   Punitive damages

are available under Montana law only upon proof of "actual fraud" or "actual malice" by

"clear and convincing evidence."   Section 27-1-221(1), (5), and (6), MCA.   In contrast to

the nine elements of common law fraud under Montana law, "actual fraud" means:

(1)    knowingly making a false representation to another who has "a right
to rely on the representation" and suffers injury as a result of reliance
thereon; or

(2)    causing injury to another by "conceal[ing] a material fact with the
purpose of depriving the [other] of property or legal rights" or
otherwise causing injury to the other.

Section 27-1-221(3) and (4), MCA.   Contrary to the District Court's apparent conflation of

"actual fraud" and common law fraud in this case, common law fraud, tortious bad faith,

or other unlawful or arbitrarily discriminatory conduct subsumed as a matter of law in the

elements of a tortious DFR claim do not necessarily equate as a matter of law with "actual

fraud" or "actual malice," as defined by § 27-1-221(2) through (4), MCA.   The question of

whether facts constituting common law fraud, tortious bad faith, or other unlawful or

arbitrarily discriminatory conduct by a mere preponderance of the evidence[1] in the DFR

---

[1] *See* § 26-1-403(1), MCA (general civil burden of proof).

43

context may also constitute "actual fraud" or "actual malice" by clear and convincing evidence, pursuant to § 27-1-221(3) and (4), MCA, is a question of fact for separate determination by the finder of fact upon proper instruction under the circumstances of each case.[2]

¶77 As in *Akins*, I am aware of no case in which this Court has exempted a particular class of tortfeasor from punitive damages liability by judicial fiat. Whether punitive damages should be available as a supplemental remedy on a Montana common law DFR claim is a question of pure public policy upon which the Legislature has unequivocally spoken in its exclusive domain. *See*, § 27-1-220(1), MCA. For these reasons, I would reach Issue 5 and hold that *Foust*'s per se bar of punitive damages on federal common law DFR claims is not consistent with existing Montana law and public policy. Thus, I would hold that MPEA is not exempt as a matter of law from punitive damages under §§ 27-1-220 and -221, MCA, on Folsom's Montana DFR claim.

/S/ DIRK M. SANDEFUR

Michael E Wheat joins in the special concurring Opinion of Justice Sandefur.

/S/ MICHAEL E WHEAT

---

[2] Note further that Restatement (Second) of Torts § 909 (1979) limits a principal's vicarious liability for punitive damages by requiring proof that the principal, apart from the agent, is directly culpable under the applicable standard of punitive damages liability. *See similarly*, *Campen v. Stone*, 635 P.2d 1121, 1123-26 (Wyo. 1981). While this Court has yet to squarely reconcile it with § 27-1-221(1), MCA, we have applied Restatement § 909 where assumed by the parties to be consistent with Montana law. *Cartwright v. Equitable Life Ins.*, 276 Mont. 1, 30-33, 914 P.2d 976, 994-96 (1996).