No. 87-285

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

JOHN J. VOGELE, JR.,

        Plaintiff and Respondent,

-vs-

THE ESTATE OF ELSIE MAY SCHOCK,
and MARYLYN FAY VOGELE and ~~CLARA~~ CARLA
RAY VOGELE Personally and in their
capacity as Personal Representatives
of the ESTATE OF ELSIE MAY SCHOCK,

        Defendants and Appellants.

APPEAL FROM: District Court of the Seventh Judicial District,
               In and for the County of Dawson,
               The Honorable R. C. McDonough, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Ira Eakin, Billings, Montana
        Russell L. Culver, Baker, Montana

    For Respondent:

        Richard L. Burns, Glendive, Montana

Submitted on Briefs: Sept. 3, 1987

Decided: November 24, 1987

Filed: NOV 24 1987

_Ethel M. Harrison_
———————————————————————
Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

Defendant Estate appeals the summary judgment of the District Court of the Seventh Judicial District, Dawson County, in favor of plaintiff John Vogele. We affirm.

The Estate presents two issues for our review:

1. Did the District Court err in finding that the ownership interest created by the certificates of deposit was a joint tenancy?

2. Did the District Court abuse its discretion in granting Vogele's motion for summary judgment?

On December 22, 1982, the First National Bank and Trust of Wibaux, Montana, issued two certificates of deposit (C.D.s) to Elsie May Schock and her children, John J. Vogele, Jr., Carla Ray Vogele, and Marylyn Fay Vogele. One C.D. had a cash value of $32,050 and the other $22,853. The C.D.s matured in June of 1985. Each C.D. states on its face:

> If more than one depositor is named above, this certificate and the deposit evidenced hereby shall belong to said depositors as <u>joint</u> <u>tenants</u> <u>with</u> <u>right</u> <u>of</u> <u>survivorship</u>, but the bank may deem and treat either or any of said depositors or the survivors or survivor as the absolute owner . . . [Emphasis added.]

By April of 1983, "hard feelings" had developed between Vogele and his mother. On November 30, 1984, Elsie May Schock executed her Last Will and Testament. The third clause of her Will states:

> At his request, I have made full and final settlement with my son, JOHN JIM VOGELE, JR., and have paid him what would normally be his inheritance, and I, therefore, specifically exclude him from any share of my estate that may be remaining at the time of my death.

2

Elsie Schock died on April 27, 1985. In June of 1985, the C.D.s were cashed by the personal representatives of Elsie's estate, Marylyn Vogele and Carla Vogele. The proceeds, less interest, were deposited in new C.D.s in the name of the Estate. The interest was deposited into the Estate's regular account.

John filed a complaint and later moved for summary judgment. John contended that he was entitled to one-third of the proceeds of the certificates of deposit as a joint tenant with Marylyn Vogele and Carla Vogele. John argued that the joint tenancy was created at the time of the written instrument, and Elsie's will did not raise the issue of ownership of the C.D.s during her lifetime. John concluded that the disinheritance clause would not apply to the C.D. proceeds because joint tenancy property was not part of Elsie's probate estate.

On March 13, 1987, the District Court granted John's motion for summary judgment. On May 5, 1987, the court awarded John $20,983.70 plus court costs of $67.40.

Issue 1. Joint Tenancy

On appeal, the Estate contends that John was merely entitled to one-fourth of the proceeds because he was a tenant-in-common. The Estate claims that the joint tenancy language on the C.D.s was only inserted for the benefit of the Bank and does not determine John's status as a joint tenant.

In analyzing this issue, we look to Casagrande v. Donahue (1978), 178 Mont. 479, 585 P.2d 1286, where a decedent had established joint savings accounts with a friend. The executrix of decedent's estate tried to include the bank accounts in the estate and thereby defeat the survivor's right to the accounts. The District Court granted summary

3

judgment in favor of the surviving joint tenant. This Court affirmed, holding that the joint savings accounts became individual property of the surviving joint tenant upon decedent's death. Casagrande, 178 Mont. at 484, 585 P.2d at 1289.

The plain language of Elsie's C.D.s creates a joint tenancy among Elsie, John and his two sisters. The C.D.s specifically state that they belong to the survivors by right of survivorship. We find that the establishment of the joint accounts by Elsie created a right of survivorship in the C.D.s for the benefit of the joint tenants named thereon.

The Estate further contends that Elsie intended to eliminate John from the proceeds of the C.D.s, as shown by the disinheritance clause and several affidavits. The Estate attempts to support its position with Anderson v. Baker (1982), 196 Mont. 494, 641 P.2d 1035, where the donor depositor of joint bank accounts sought the return of her funds prior to her death. We held:

> [W]here, as here, a depositor during his or her lifetime raises the issue of ownership of funds in a joint tenancy account, the statements on the signature card are not conclusive and additional evidence may be examined to ascertain the true intent of the parties. (Emphasis added.)

Anderson, 196 Mont. at 500, 641 P.2d at 1038.

We distinguish Anderson from the present case. Anderson dealt with a living depositor making a written demand and filing a lawsuit to recover her C.D.s from another joint tenant. In the instant case, Elsie made no such attempts. The disinheritance clause in Elsie's will is not an affirmative act taken "during her lifetime" because a will does not take effect until the death of the testator and is therefore revokable. Something more substantial than a disinheritance

4

clause must occur to bring the C.D.s within the Anderson exception. Furthermore, the disinheritance clause refers only to the probate estate. Joint tenancy property is not part of a probate estate. As we held in Casagrande, 178 Mont. at 484, 585 P.2d at 1289, the joint tenant's right of survivorship, "which is the essential characteristic of any joint tenancy, cannot be defeated by the executrix of decedent's estate, in an attempt to satisfy general devises in the Will."

The Estate also presented several third-party affidavits, which stated that Elsie did not want John to share in any of her property. However, we need not address the probative value of the affidavits because Elsie never took any positive action in conformance with the affidavits. At any time before her death, Elsie could have asked the Bank to reissue the C.D.s without John's name and thereby terminate John's interest. Section 32-1-442, MCA. She did not. Elsie's conduct controls, not the third-party affidavits. Her lack of action never rose to a level of conduct manifesting an intention to eliminate the joint tenancy.

Finally, the Estate claims that Elsie did not sign the C.D.s and therefore did not intend to create a joint tenancy. Estate's claim fails. The C.D.s were not accompanied by signature cards. The C.D. forms had neither the requirement nor the designated space for a signature. Elsie knowingly established the C.D.s with the rights of the joint tenants clearly set forth in the deposit agreement.

In conclusion, we note that a joint tenancy account is a vehicle for the nonprobate disposition of estate assets. The method is quick, convenient, and inexpensive. Elsie's ownership interest as a joint tenant ceased upon her death, and the joint property immediately passed to the surviving joint tenants. Section 70-1-307, MCA. Absent any

5

affirmative attempts by Elsie to divest or revoke Vogele's interest during Elsie's lifetime, we find that the language of the C.D.s conclusively establishes Elsie's intention to create a joint tenancy with right of survivorship. We hold that the District Court correctly awarded judgment to John Vogele, Jr.

Issue 2. Summary Judgment

The Estate contends that Elsie's true intent remains in issue and, therefore, summary judgment was inappropriate.

On review, we will uphold the summary judgment if there is no genuine issue of material fact and the evidence shows the moving party is entitled to judgment as a matter of law. Sevalstad v. Glaus (Mont. 1987), 737 P.2d 1147, 1148, 44 St.Rep. 930, 932.

As the party moving for summary judgment, John had the burden of establishing the absence of any genuine issue of material fact. He met this burden. John did not challenge any of the Estate's facts. He stated in his Respondent's Brief: "The facts of this case are accurately set forth in Appellant's Brief on Appeal." Accordingly, we find no factual dispute.

When the movant has met this initial burden, the party opposing the motion must supply evidence supporting the existence of a genuine issue of fact. Fleming v. Fleming Farms, Inc. (Mont. 1986), 717 P.2d 1103, 1106, 43 St.Rep. 776, 779. Rule 56(c), M.R.Civ.P. We find that the evidence produced by the Estate is insufficient to show a factual dispute.

We affirm the District Court's summary judgment.

Chief Justice

We concur:

_____

_____

_____

_____
                    Justices