FILED

September 29 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0131

DA 15-0131

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 282

IN RE THE MATTER OF THE ESTATE OF

AUGUST J. SCHREIBER,

      Deceased.

| | |
|---|---|
| APPEAL FROM: | District Court of the Fifth Judicial District, In and For the County of Beaverhead, Cause No. DP 13-5298 Honorable Loren Tucker, Presiding Judge |

COUNSEL OF RECORD:

      For Appellant:

      Thomas R. Scott, Attorney at Law, Dillon, Montana

      For Appellee:

      Jaime Harlicker, self-represented, Three Forks, Montana

      Brittany Watkins, self-represented, Dillon, Montana

Submitted on Briefs: August 5, 2015

Decided: September 29, 2015

Filed:

_____
               Clerk

Justice Patricia Cotter delivered the Opinion of the Court.

¶1     August Schreiber died testate on September 30, 2013.  His will appointed his grandson, John Watkins, personal representative.  The will devised three lots and five certificates of deposit to Schreiber's granddaughter, Jaime Harlicker, and the children of Schreiber's grandson, Donald Watkins.  The personal representative was also the residuary beneficiary of the will.  Between the time Schreiber executed his will and the date of his death, he sold the lots and certificates of deposit.  In his capacity as personal representative, John Watkins traced the proceeds from the sale of the lots and the certificates of deposit using the "first in, first out" accounting method, and concluded that Schreiber had spent all the proceeds of the sales prior to the date of his death.

¶2     The personal representative filed a final accounting and petition for distribution with the Fifth Judicial District Court, Beaverhead County, that called for Jaime Harlicker and the children of Donald Watkins to receive nothing, and the residuary beneficiary to receive the net distributable estate.  The named beneficiaries objected to the personal representative's methods and conclusions.  The District Court denied the final accounting and petition for distribution, finding that the personal representative breached his fiduciary duty by interpreting the will to benefit himself at the expense of other beneficiaries.  The personal representative appealed.  We affirm in part, reverse in part, and remand to the District Court for issuance of an amended order in accordance with this Opinion.

## ISSUES

¶3    We restate the issues on appeal as follows:

¶4    Did the District Court err in concluding that the devise of the lots and the certificates of deposit had not been adeemed and the named beneficiaries were thus entitled to a distribution amounting to the value of the lots and the certificates of deposit?

¶5    Did the District Court err when it rejected the final accounting submitted by the personal representative?

## FACTUAL AND PROCEDURAL BACKGROUND

¶6    August J. Schreiber of Beaverhead County died testate on September 30, 2013. His Last Will and Testament and the First Codicil to Last Will and Testament (collectively the "Will") were admitted to informal probate on October 10, 2013. In accordance with Schreiber's Will, his grandson, John Watkins (hereafter "John" or the "personal representative"), was appointed personal representative. John is also the residuary beneficiary under his grandfather's Will.

¶7    Paragraph 12 of Schreiber's Will provides, in relevant part:

> I hereby give, devise and bequeath unto JAMIE HARLICKER and to the children of DONALD WATKINS who shall have survived me the following described property:
>
> (d)    Those three (3) lots held by me in the Schreiber Amended Subdivision, and in the event of sale or disposition of said lots, or any or [sic] them, any receipts, payments, proceeds, certificates, deposits, income or accounts as a result of or arising out of the sale or disposition of said lots, or any of them.
>
> (e)    Those certain five (5) certificates of deposit now held by me and in my name in NMBA, along with any income and accumulations therein.

3

(f)     Any future certificates of deposit, or other accounts that I may purchase, obtain or maintain or obtain in or with NMBA, along with any and all income and proceeds thereof.

The above described property shall be divided into two (2) equal parts, with one part or one-half (1/2) thereof distributed to JAMIE HARLICKER and the second part or remaining one-half (1/2) thereof divided equally among the children of DONALD WATKINS who shall survive me.

¶8     Schreiber executed his Last Will and Testament on January 27, 2003, and the First Codicil to Last Will and Testament on November 5, 2004. In 2005, Schreiber sold the three lots referenced in paragraph 12(d) for $20,000 each. In 2007, Schreiber cashed the NMBA certificates of deposit ("CDs") referenced in paragraph 12(e). The personal representative estimates the CDs had a total value between $51,989.52 and $59,987.91.[1] According to the personal representative's calculations, from 2005 until the time of his death, Schreiber spent a total of $301,392.74. Using the "first in, first out" ("FIFO") accounting method, the personal representative traced the proceeds of the lots and the CDs, determined that all funds from the lots and CDs had been consumed by Schreiber prior to his death, and concluded that no money remained to be distributed to the named beneficiaries. As a result, the net distributable estate of $111,110.33[2] would pass to John

---

[1]  NMBA was dissolved prior to 2007 and the CDs were transferred to Bank of America. The total value of the CDs can only be estimated because Bank of America could not produce records of the CDs. The personal representative arrived at the approximate value of the CDs by using a 1099-INT statement issued by Bank of America during tax year 2006. The statement showed Schreiber received interest income of $2,729.45 on the CDs that year. The personal representative used interest rates from local banks during 2006 to estimate the value of the CDs based on the interest income they generated.

[2]  In the final accounting, the personal representative incorrectly reported that the net distributable estate is $138,115.39. He reached the correct calculation of $111,110.33 in his reply brief.

4

himself, as the residuary beneficiary. John prepared a final accounting reflecting this conclusion and filed it with the District Court on August 27, 2014.

¶9 The District Court held a hearing on the final accounting and petition for distribution on September 30, 2014. The only attendants other than the personal representative and his attorney were Jaime Harlicker,[3] a granddaughter of the decedent, and Brittany Watkins, a great-granddaughter of the decedent. Jaime and Brittany objected to the personal representative's conclusion that the named beneficiaries were to receive nothing under paragraph 12 of the decedent's Will. Specifically, they objected to the personal representative's use of the FIFO method of tracing proceeds.

¶10 The District Court found that the personal representative failed to show Schrieber intended ademption of the devises of the lots and the CDs, and that a personal representative breaches his fiduciary duty by interpreting a will to benefit himself at the expense of other beneficiaries. The District Court denied the final accounting and petition for distribution and directed the personal representative to file an amended accounting with a proposed distribution that provides Jaime and the children of Donald Watkins with the value of the three lots and the five CDs. The personal representative filed a timely appeal. Additional facts will be discussed as necessary in the following analysis.

---

[3] Jaime's name was incorrectly spelled "Jamie" in the Will.

5

## STANDARD OF REVIEW

¶11 The interpretation and construction of a will presents a question of law, which we review for correctness. *In re Estate of Ayers*, 2007 MT 155, ¶ 12, 338 Mont. 12, 161 P.3d 833.

## DISCUSSION

¶12 *Did the District Court err in concluding that the devises of the lots and the certificates of deposit had not been adeemed and the named beneficiaries were thus entitled to a distribution amounting to the value of the lots and the certificates of deposit?*

¶13 Paragraph 12 of Schreiber's Will specifically devises the lots and the CDs to Jaime Harlicker and the children of Donald Watkins. But neither the lots nor the CDs remained in Schreiber's estate on the date of his death, which raises the question of whether the devises were adeemed. Ademption is "[t]he destruction or extinction of a testamentary gift by reason of a bequeathed asset's ceasing to be part of the estate at the time of the testator's death." *Black's Law Dictionary* 47 (Bryan A. Garner ed., 10th ed. 2014). At common law, a specific devise of property was adeemed or extinguished if the property was not part of the estate on the date of the decedent's death. Title 72, chapter 2, MCA, *Annotations*, Official Comments at 613 (2012). However, under the Uniform Probate Code, Montana allows for the nonademption of some specific devises. Section 72-2-616, MCA provides:

> (1) A specific devisee has the right to the specifically devised property in the testator's estate at death and: . . .
> (f) unless the facts and circumstances indicate that ademption of the devise was intended by the testator or ademption of the devise is consistent with the testator's manifested plan of distribution, the value of the specifically devised property to the extent the specifically devised property is not in the

6

testator's estate at death and its value or its replacement is not covered by subsections (1)(a) through (1)(e).

This section "creates a mild presumption against ademption by extinction, imposing on the party claiming that an ademption has occurred the burden of establishing that the facts and circumstances indicate that ademption of the devise was intended by the testator or that ademption of the devise is consistent with the testator's manifested plan of distribution." *Holtz v. Deisz*, 2003 MT 132, ¶ 35, 316 Mont. 77, 68 P.3d 828 (citing Official Comments to § 72-2-616, MCA).

¶14 The District Court correctly concluded that Schreiber did not intend ademption of his specific devise of the lots. After devising the lots to Jaime Harlicker and the children of Donald Watkins, Schreiber explicitly acknowledged the possibility that the lots may not be part of his estate on the date of his death. His Will provides that "in the event of sale or disposition of said lots, or any of them, any receipts, payments, proceeds, certificates, deposits, income or accounts as a result of or arising out of the sale or disposition of said lots, or any of them" are devised to the named beneficiaries. Such a provision only reinforces the existing "mild presumption" against ademption.

¶15 The personal representative, as the party claiming the devise of the lots was adeemed, bore the burden of establishing that the testator intended ademption or that ademption is consistent with the testator's plan of distribution. He did not meet that burden. John maintains that the proceeds from the sale of the lots must be traceable in order to be distributable. But the Will insists on no such tracing requirement; it simply devises to the named beneficiaries "any receipts, payments, proceeds, certificates,

deposits, income or accounts" that arise from the sale of the lots. As the District Court noted, by insisting on tracing the proceeds of the sales, John effectively interpreted this provision out of the Will.

¶16 The words of a writing are to be given their primary and general meaning, unless a technical meaning was used and understood. Section 1-4-107, MCA. Although "proceeds" does have a technical meaning in some instances—for example, in the bankruptcy code and Article 9 of the Uniform Commercial Code—its primary and general meaning is simply "the profits or returns from a sale." *Webster's Unabridged Dictionary* 1542 (2d ed. 2001). Schreiber's sale of the lots in 2005 resulted in proceeds of $60,000, which he devised to the named beneficiaries in his Will. The District Court correctly concluded that Schreiber did not intend ademption, so the proceeds of the sale of the lots are to be distributed to Jaime and the children of Donald Watkins, regardless of whether the original funds can be traced through Schreiber's accounts using the FIFO or any other method.

¶17 However, the language in Schreiber's Will devising the CDs differs from the language devising the lots. Regarding the CDs, Schreiber simply devised "[t]hose certain five (5) certificates of deposit now held by me and in my name in NMBA, along with any income and accumulations therein." The five NMBA CDs were no longer in existence on the date of Schreiber's death, and the Will makes no reference to proceeds from these CDs. It is also notable that Schreiber held CDs in other banks but did not devise them or designate them as a back-up to the NMBA CDs. Following "the bedrock principle of honoring the intent of the testator," *Holtz*, ¶ 23, it is clear that Schreiber intended

8

ademption of the devise of the CDs. Accordingly, the devise of the five NMBA CDs is adeemed. Section 72-2-616, MCA; Title 72, chapter 2, MCA, *Annotations*, Official Comments at 613 (2012). The District Court incorrectly ordered the personal representative to distribute to the named beneficiaries the value of those CDs.

¶18 *Did the District Court err when it rejected the final accounting submitted by the personal representative?*

¶19 The District Court denied the personal representative's final accounting and petition for distribution and instructed the personal representative to file an amended accounting that provides distribution to Jaime and the children of Donald Watkins equivalent to the value of the lots and CDs. Although the District Court incorrectly concluded that the devise of the CDs had not been adeemed, it did not err in rejecting the final accounting. We affirm the District Court's rejection of the final accounting and remand with instructions to the District Court to order the personal representative to file an amended accounting that distributes the value of the lots but not the value of the CDs to the named beneficiaries. The amended accounting should also clarify the fate of certain items of property Schreiber held in joint tenancy with rights of survivorship with John.

¶20 Under the Uniform Probate Code, the term "joint tenants with the right of survivorship" "includes co-owners of property held under circumstances that entitle one or more to the whole of the property on the death of the other or others . . . ." Section 72-1-103(27), MCA. We have held that "[o]rdinarily, upon the death of one joint tenant, the decedent's ownership interest ceases and the jointly-held property immediately passes

9

to the surviving joint tenant as a matter of law." *In re Estate of Garland*, 279 Mont. 269, 271, 928 P.2d 928, 930 (1996) (citing *Vogele v. Estate of Schock*, 229 Mont. 259, 263, 745 P.2d 1138, 1140 (1987)). Thus, any property Schreiber held in joint tenancy passed immediately to the joint tenant upon his death and should not have been included in the distributable estate.

¶21 The record reflects that John and Schreiber held a checking account and some silver in joint tenancy at the time of Schreiber's death. The fate of this property was not clear from the final accounting. In the "Assets on Hand at Date of Death" section of the final accounting, John included $38,974.64 from the joint checking account. Also included was 1,247 ounces of silver valued at $27,005.03 that Schreiber held in a safe deposit box in joint tenancy with John. Then in the "Cash Disbursements" section of the final accounting, John reported that the $38,974.64 from the checking account had been disbursed to him as joint tenant. The value of the silver was not accounted for under "Cash Disbursements" but was erroneously included in the net distributable estate. John now argues that the District Court erred when it failed to exclude the safe deposit box and checking account from the distributable estate. After several misstatements and miscalculations, the personal representative reached the correct conclusion in his reply brief that the net distributable estate should exclude both the value of the checking account and the value of the silver, both of which should be disbursed to him as joint tenant. The amended accounting should reflect disbursements of property held in joint tenancy and a net distributable estate of $111,110.33, not $138,115.39, as appeared in the final accounting.

10

¶22 The District Court did not err when it denied the final accounting and petition for distribution because the accounting contained errors. An amended accounting should distribute to Jaime Harlicker and the children of Donald Watkins the value of the three lots but not that of the five certificates of deposit, and should exclude from the distributable estate the value of property held in joint tenancy with John.

**CONCLUSION**

¶23 For the foregoing reasons, we affirm in part and reverse in part the District Court's February 12, 2015 Order and remand to the District Court for issuance of an amended order in accordance with this Opinion.


/S/ PATRICIA COTTER


We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ LAURIE McKINNON


Justice Jim Rice, concurring.

¶24 I concur with the Court's holdings, but I reach those conclusions via slightly different reasoning.

¶25 Schreiber devised the lots, as well as any receipts, proceeds or deposits arising out of the sale or disposition of the lots, to a grandchild and great grandchildren. The Court sees the proceeds provision as having the effect of "reinforc[ing]" the presumption

11

against ademption, Opinion, ¶ 14, but I consider the proceeds to be, not merely an enhancement of the devise of the lots, but a specific devise itself to which the anti-ademption statute must be applied. In other words, had Schreiber's Will simply stated, "I give the proceeds of the sale of my lots" to the devisees, the proceeds would clearly stand on their own as a specific devise. That is the same situation that developed here, following the sale of the lots, and I believe the proceeds should be analyzed in that way.

¶26 John took the position that the proceeds of the lots had to be traceable for the devise to be valid. The Court rejects this position, reasoning that the Will imposed no tracing requirement and that "by insisting on tracing the proceeds of the sale, John effectively interpreted this provision [regarding proceeds] out of the Will." Opinion, ¶ 15. I also reject John's position that the proceeds had to be traceable for the devise to be valid, but I would not go so far as to say that tracing itself was inappropriate merely because the Will imposed no such requirement. Rather, I believe the effort to trace the proceeds was an appropriate tool in gathering evidence and making a determination from "the facts and circumstances" whether "ademption of the devise was intended by" Schreiber or was "consistent with [Schreiber's] manifested plan of distribution." Section 72-2-616(1)(f), MCA. Had the proceeds been traceable and found to be preserved intact, the case against ademption would have been strengthened to a certainty. Here, while the proceeds could not be traced, that fact alone, in my view, did not overcome the presumption against ademption, given that sufficient other cash monies were held by the Estate to permit distribution of "the value of the specifically devised

property." Section 72-2-616(1)(f), MCA. Again, the specifically devised property for this analysis is, not the lots, but the proceeds.


/S/ JIM RICE