Justice James Jeremiah Shea delivered the Opinion of the Court.
***72 ¶1 Farmers State Financial Corporation (Farmers) appeals the Order of the Twenty-First Judicial District Court, Ravalli County, awarding punitive damages against Farmers for fraudulent stock conversion.
¶2 We restate the issues as follows:
Issue One: Whether the District Court Order restoring John Cote, Jr.'s converted Stock constituted an award of compensatory damages for purposes of determining an award of punitive damages.
Issue Two: Whether the District Court erred by finding that Farmers was subject to punitive damages because it acted with actual malice.
Issue Three: Whether the award of punitive damages was excessive.
¶3 We affirm.
PROCEDURAL AND FACTUAL BACKGROUND
¶4 This appeal arises from an estate contest between Janice Smith-Cote, wife of John *225 P. Cote, Sr. (John Sr.), John P. Cote, Jr. (John Jr.), and other members of the Cote family. This Court affirmed an earlier appeal in which the District Court replaced Smith-Cote as personal representative of John Sr.'s estate. See In re Estate of Cote , No. DA 16-0295, 387 Mont. 535, 2017 WL 203681, 2017 MT 11N, ¶¶ 2, 16, 2017 Mont. LEXIS 13.[1] The current appeal involves shares of Farmers' Stock that John Jr. owned with his father, John Sr., and Farmers' disposition of shares of that stock relative to John Jr.
¶5 On November 27, 1995, Farmers (then called Alpha-Omega Holding Company) issued stock to John Sr. and John Jr. as joint tenants with right of survivorship (JTWROS). On March 26, 1997, ***73 John Sr. and John Jr. jointly owned 181.619 shares pursuant to Farmers' Stock Certificate No. 20, which identified the owners as "John P. Cote, Sr., or John P. Cote, Jr., JTWROS."[2]
¶6 In January 2011, John Sr. and Smith-Cote were living in Renton, Washington. Farmers communicated with Smith-Cote about transferring Stock ownership from John Sr. and John Jr. to John Sr. only. On January 19, 2011, Farmers' Executive Secretary sent Smith-Cote an e-mail with an attached "Stock Power Form" recognizing John Sr. and John Jr. as owning the Stock as JTWROS. The same day, Farmers' President sent an e-mail to the Executive Secretary regarding the proposed transfer of Stock ownership:
[W]ill you find out ihow [sic] [Smith-Cote] wants the [S]tock titled? Will it be just in her name or if John Jr. will be on it also as he is now?? He doesn't need to be, I just want to make sure it is how [John Sr.] wants it. [I]f so whether it is joint with survivorshilp [sic] or as tennats [sic] in common....
¶7 John Sr. purportedly signed two stock power forms, one dated January 21, 2011, and the other dated February 3, 2011. Farmers' policies and procedures require each stock owner's signature on a stock power form to be accompanied by a medallion signature guarantee to effectuate transfer of Farmers' stock. A medallion signature guarantee is an endorsement affixed to a request to transfer a security by the transferring financial institution that guarantees the genuineness of the signature and the legal capacity of the signatory. John Jr. and John. Sr.'s Stock required an Edward Jones' medallion signature guarantee.[3] The January 21, 2011 Stock Power Form (January Form) was sent to Edward Jones' offices in St. Louis, Missouri. No Edward Jones' employee authorized to affix the medallion signature guarantee witnessed the execution of the January Form. However, several days after John Sr. allegedly signed the January Form, an Edward Jones employee affixed a medallion signature guarantee to the Form. Farmers claimed it never received the January Form, and the January Form was not found in Farmers' records. On February 2, 2011, Farmers contacted Smith-Cote to notify her no signed form had been ***74 received.
¶8 On February 3, 2011, John Sr. purportedly received and signed a second Stock Power Form (February Form) in an attempt to transfer all 181.619 shares of the Stock to Smith-Cote. Edward Jones has no records of any employee being present to witness the execution of the February Form. On February 5, 2011, John Sr. passed away. On February 7, 2011, the local branch of Edward Jones transmitted the February Form to the Edward Jones' St. Louis office. At an uncertain point in time, the February Form was also stamped with a medallion signature guarantee issued by Norman Eaker, CEO of Edwards Jones, although *226 Eaker was not present to witness John Sr. sign the Form. Edward Jones transmitted the February Form to Farmers. Farmers then canceled the Stock held by John Sr. and John Jr. and transferred all 181.619 shares to Smith-Cote. The Stock Certificate cancellation and reissue date was February 3, 2011. The February Form Farmers accepted had been altered from the form Farmers originally provided to Smith-Cote.
¶9 In November 2012, John Jr. requested records from Farmers related to the Stock. John Jr. learned of the Stock transfer to Smith-Cote when Farmers responded in December 2012. Farmers determined that it had erred in transferring all 181.619 shares to Smith-Cote, declaring that it should have only transferred half the Stock. On December 21, 2012, Farmers requested that Smith-Cote return the Stock Certificate, which she did on June 24, 2014.
¶10 On February 28, 2013, John Jr. and the Cote family initiated litigation against Smith-Cote. See In re Estate of Cote , ¶ 4. On June 30, 2014, John Jr. and the Cotes filed an Amended Petition, alleging claims of undue influence and lack of capacity, conversion, fraud, and unjust enrichment against Smith-Cote regarding the Stock transfer. In re Estate of Cote , ¶ 4. The Amended Petition also stated claims against Farmers for negligent violation of fiduciary duties and conversion. On March 28, 2014, Farmers wrote to John Jr. and advised him that in exchange for a release of liability, Farmers would issue John Jr. a certificate for half of the Stock, or 90.8095 shares. John Jr. declined to sign a release, and Farmers did not issue a stock certificate. Farmers answered with a counterclaim and cross-claim for interpleader against John Jr. John Jr. responded and reiterated his claims against Farmers, alleging breach of the duty of care owed to a stockholder, breach of the fiduciary duty owed to a stockholder, breach of the duty of good faith and fair dealing, and requesting punitive damages. Around August 14, 2015, Farmers filed a motion for summary judgment, arguing that Smith-Cote and John Jr. each owned equal shares of the 181.619 ***75 shares of Farmers' Stock as tenants in common.
¶11 The District Court conducted two bench trials: on August 31-September 1, 2015, and on April 19-20, 2016. On April 11, 2016, the District Court granted John Jr.'s motion for partial summary judgment against Smith-Cote and Farmers. The District Court held that John Jr. is the sole owner of all 181.619 shares of Stock because Farmers did not transfer the Stock to Smith-Cote until after John, Sr.'s death. The District Court found there was no genuine dispute as to the following material facts: (1) John Jr. did not provide his consent to transfer all shares of the jointly held Farmers' Stock at issue to Smith-Cote; (2) the medallion signature guarantee, which was a requirement on Farmers' own form, was not provided until sometime after February 7, 2011, regardless of when the stamp was affixed; (3) the February Form was not transmitted to Farmers in order to effectuate the transfer until sometime after John Sr.'s death; and (4) Farmers' admission that it erred is an additional ground showing that the attempted transfer is invalid in its entirety. On March 2, 2017, Farmers represented to the District Court that it paid the remaining 2012-2016 dividends on the Stock and has now paid all the dividends on the 181.619 shares of Stock to John Jr., together with interest.
¶12 On March 16, 2017, the District Court issued an order requiring Farmers to pay John Jr. (1) any and all outstanding dividends with ten percent interest that has not already been paid on the 181.619 shares of Stock, including any dividends distributed to stockholders between February 3, 2011 and the order date; (2) $1.1 million in punitive damages to John Jr.; and (3) John Jr.'s costs in pursuing recovery of the Stock. Farmers filed a motion to vacate or reduce the award of punitive damages. The District Court denied Farmers' motion. Farmers appeals.
STANDARDS OF REVIEW
¶13 This Court reviews a district court's conclusions of law de novo for correctness.
*227 Folsom v. Mont. Pub. Emps. Ass'n , 2017 MT 204, ¶ 18, 388 Mont. 307, 400 P.3d 706 ; Giambra v. Kelsey , 2007 MT 158, ¶ 28, 338 Mont. 19, 162 P.3d 134. A district court's interpretation and application of statutes presents a question of law. See Kulstad v. Maniaci , 2009 MT 326, ¶ 50, 352 Mont. 513, 220 P.3d 595. We review a district court's decision to award punitive damages for an abuse of discretion. Osman v. Cavalier , 2011 MT 60, ¶ 7, 360 Mont. 17, 251 P.3d 686. We review a district court's findings under the statute setting out requirements for awards of punitive damages, § 27-1-221, MCA, to ***76 determine whether the findings are clearly erroneous. Marie Deonier & Assocs. v. Paul Revere Life Ins. Co. , 2004 MT 297, ¶ 39, 323 Mont. 387, 101 P.3d 742. "A district court's findings are clearly erroneous if they are not supported by substantial credible evidence, if the [district] court misapprehended the effect of the evidence, or if a review of the record leaves this Court with the definite and firm conviction that a mistake has been committed." Beaver v. Mont. Dep't of Nat. Res. & Conserv. , 2003 MT 287, ¶ 79, 318 Mont. 35, 78 P.3d 857 ; Marie Deonier & Assocs. , ¶ 39. This Court's review of a district court's application of §§ 27-1-220, -221, MCA, is plenary. Osman , ¶ 7. This Court reviews de novo the constitutionality of punitive damages awards. McCulley v. U.S. Bank of Mont. , 2015 MT 100, ¶ 20, 378 Mont. 462, 347 P.3d 247 (citing Seltzer v. Morton , 2007 MT 62, ¶ 152, 336 Mont. 225, 154 P.3d 561 ).
DISCUSSION
¶14 Issue One: Whether the District Court Order restoring John Cote, Jr.'s converted Stock constituted an award of compensatory damages for purposes of determining an award of punitive damages.
¶15 Compensatory damages are designed to compensate the injured party for an actual loss or injury. Sunburst Sch. Dist. No. 2 v. Texaco, Inc. , 2007 MT 183, ¶ 40, 338 Mont. 259, 165 P.3d 1079 ; Seltzer , ¶ 148 ; State Farm Mut. Auto Ins. Co. v. Campbell , 538 U.S. 408, 416, 123 S.Ct. 1513, 1519, 155 L.Ed.2d 585 (2003) ("[c]ompensatory damages are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct....") (internal citations omitted); Semenza v. Bowman, 268 Mont. 118, 126, 885 P.2d 451, 456 (1994) ; § 27-1-317, MCA ; Restatement (Second) of Torts, § 903 cmt. a (Am. Law Inst. 1979) ("[w]hen there has been harm only to the pecuniary interests of a person, compensatory damages are designed to place him in a position substantially equivalent in a pecuniary way to that which he would have occupied had no tort been committed...."). The "proper measure of compensatory damages must be determined solely based on the facts of each case." Seltzer , ¶ 96. By contrast, "punitive damages serve a broader function; they are aimed at deterrence and retribution." Campbell , 538 U.S. at 416, 123 S.Ct. at 1519.
¶16 A party may recover lost profits if the profits can be established with some certainty and proof of source. DeTienne v. Sandrock , 2018 MT 269, ¶¶ 14, 18, 393 Mont. 249, 431 P.3d 12 (citing § 27-1-317, MCA ); Delaney & Co. v. City of Bozeman , 2009 MT 441, ¶¶ 41-42, 354 Mont. 181, 222 P.3d 618. Dividends are a portion of a ***77 company's profits distributed to shareholders in the form of money or additional shares. Dividends , Black's Law Dictionary (10th Ed. 2014). Here, the withheld dividends amount to lost profits and can be established with complete certainty of amount and source.
¶17 Interest as damages is includable in a judgment. Section 27-1-211, MCA ("[e]ach person who is entitled to recover damages certain or capable of being made certain by calculation and the right to recover which is vested in the person upon a particular day is entitled also to recover interest on the damages from that day...."). Securities have an immediate "use" value, like money. Including interest in the calculation of damages reflects a defendant's use of a plaintiff's money (or securities) that must be included in a judgment to ensure a plaintiff is fully compensated. Byrne v. Terry , 228 Mont. 387, 391, 741 P.2d 1341, 1343 (1987) (citing § 27-1-211, MCA ). As the Dissent correctly points out, the interest on the Stock was compensatory damages designed to compensate John Jr. for Farmers' wrongful detention of John Jr.'s money. Dissent, ¶ 62.
*228 ¶18 Under Montana's adopted version of the Uniform Commercial Code, "[a]n issuer that is liable for wrongful registration of transfer ... on demand shall provide the person entitled to the security with a like certificated or uncertificated security, and any payments or distributions that the person did not receive as a result of the wrongful registration." Section 30-8-414(2), MCA.
¶19 The District Court found that Farmers is an issuer and is liable for wrongful registration of t he transfers of Stock to Smith-Cote. The District Court relied on a Delaware case applying a statute identical[4] to Montana's adopted provisions, § 30-8-414(2), MCA, and interpreting official comments that are consistent with Montana's official comments. The Delaware Court held that the "right to elect damages instead of the return of duplicate securities does not exist under ordinary circumstances ... where the issuer acts with reasonable promptness." Tuggle v. Am. Fin. Sys. , 1978 WL 21995, at *3, 1978 Del. Ch. LEXIS 659, at *7 (Del. Ch. June 22, 1978). However, "[t]he draftsmen's official comments to [§ 8-404] note that the case law has also recognized the right to elect between an equitable action to compel issue of a new ***78 security and an action for damages." Tuggle , 1978 WL 21995, at *2, 1978 Del. Ch. LEXIS at *6. Applying the Delaware Court's rationale, the District Court determined that Farmers did not act with "reasonable promptness." Despite Farmers' representations to the District Court and John Jr.'s repeated demands, it took Farmers nearly five years from the time Farmers admitted to John Jr. that it improperly transferred the Stock until it finally returned the Stock to John Jr. Thus, the District Court concluded Farmers was not entitled to the statutory protections or limitations on damages under § 30-8-414, MCA, and was obligated to make John Jr. whole. The District Court concluded John Jr. was entitled to compensatory damages in the form of the Farmers stock, interest, and dividends, and that Farmers was not entitled to the statutory limitation of remedies.
¶20Farmers argues the remedy for wrongful registration of a security is not compensatory damages, and the District Court erred in awarding punitive damages to John Jr. Farmers contends that the proper remedy under § 30-8-414(2), MCA, is requiring the financial institution to reissue the security, along with any payments or distributions the aggrieved party did not receive as a result of the wrongful registration. Farmers argues it complied with the statute when it returned the Stock. John Jr. counters the District Court correctly identified the Stock, dividends, and interest as "compensatory damages" in the amount of at least $477,846.85. We agree.
¶21 In pleadings and in the District Court's order regarding partial summary judgment, Farmers conceded it is an issuer and is liable for "wrongful registration of transfer" of the Stock to Smith-Cote. See § 30-8-414, MCA
¶22 When Farmers wrongfully transferred the Stock, John Jr. clearly suffered damages. Farmers refused John Jr.'s repeated demands for the return of all 181.619 shares of Stock. Nearly five years passed between when Farmers admitted to John Jr. that it improperly transferred John Jr.'s Stock to Smith-Cote and when Farmers represented to the District Court that it had paid all shares of Stock, plus interest and dividends, to John Jr. Farmers forced John Jr. to seek a judicial remedy to compel Farmers to return the other half of the Stock, plus interest and dividends. Throughout this period, John. Jr. was deprived of the use and value of his Stock.
¶23 Compensatory damages are designed to make a party whole, and a court should determine compensatory damages based on the facts of each case. Seltzer , ¶¶ 96, 148. Here, the Stock is equivalent to compensatory damages. See Campbell , 538 U.S. at 416, 123 S.Ct. at 1519. The Stock is fungible, transferrable, and with a redeemable, *229 ***79 immediately liquid ascertainable cash value that serves as compensation for a pecuniary loss. See Seltzer , ¶ 148 ; Campbell , 538 U.S. at 416, 123 S.Ct. at 1519.
¶24 Unlike a court-ordered return of a unique piece of property, wrongful registration of a security under § 30-8-414(2), MCA, requires that the party who wrongfully registered the security provide the wronged party "with a like certificated or uncertificated security, and any payments or distributions that the person did not receive as a result of the wrongful registration." (Emphasis added.) The issuance of the Stock constituted an immediate restoration of monetary value to John Jr.: the value of the certificated Stock, plus accrued interest and dividends. The interest and dividends were necessary to fully restore John Jr. for his detriment suffered at the hands of Farmers. See §§ 27-1-201, -202, MCA. The Dissent contends that the issuance of the Stock is an equitable remedy and one not equivalent to, or interchangeable with, compensatory damages. Dissent, ¶¶ 47-49. However, we have consistently held that "the purpose of compensatory damages ... is to redress the concrete loss that a plaintiff has suffered by reason of a defendant's wrongful conduct." Seltzer , ¶ 148 (citing Campbell , 538 U.S. at 416, 123 S.Ct. at 1519 ). That is precisely what occurred in this case. John Jr. suffered a concrete loss by reason of Farmers' wrongful conduct. The District Court redressed Farmers' wrongful conduct by requiring Farmers to issue a like security, along with payment for the ancillary pecuniary loss John Jr. suffered as a result. Based on the contemporaneous value of the Stock, the parties and the District Court were able to calculate to the penny John. Jr.'s concrete losses. Further, on the day John Jr. received the Stock certificates, he could have immediately converted the Stock to cash, no different than he could have deposited a check for the damages he suffered. If something "looks like a duck, walks like a duck and quacks like a duck, it must be a duck." Wild v. Fregein Constr ., 2003 MT 115, ¶ 31, 315 Mont. 425, 68 P.3d 855. In both form and substance, the District Court's award in this case was a duck.
¶25 The Dissent points to a comment to § 30-8-414, MCA, that, historically, when an issuer wrongfully registered a security transfer, some courts allowed the registered owner to elect between the issuance of new stock and a claim for monetary damages, which § 30-8-414, MCA, does not provide. Dissent, ¶ 49. The Dissent then makes the unsupported leap that the elimination of an election of remedies means that the statutorily prescribed remedy is necessarily an equitable one. Dissent, ¶ 49. Since both remedies were designed to redress the ***80 concrete loss suffered by the wronged party, however, the elimination of one remedy is less proof of an intent to constrain the redress obtained, and more a recognition that the remedies are just two ducks of a different color.
¶26 Finally, during the April 19-20, 2016 bench trial and in its September 2016 proposed Supplemental Findings of Fact and Conclusions of Law, Farmers framed the dispute over the return of Stock as "damages" and called its March 2014 offer to return half the Stock a way for John Jr. to "mitigate [his] damages." Farmers points out that its mitigation argument was in reference to the financial pressure John Jr. felt relating to litigation costs,[5] the fact that potential acceptance of half the Stock at an earlier stage in the proceeding could have been used to solve John Jr.'s financial concerns goes to Farmers' treatment of the Stock as monetary damages.
¶27 The District Court did not err when it concluded John Jr. was entitled to the compensatory damages in the form of all the shares of Farmers' Stock, plus appropriate dividends and interest. See Kulstad , ¶ 50 ; Giambra , ¶ 28. This award of compensatory damages thus enabled the District Court to consider punitive damages against Farmers. See Folsom , ¶ 51 ("punitive damages are not available as a matter of law absent an award of compensatory damages on a predicate cause of action from which the actual malice or actual fraud arose....").
*230 ¶28 Issue Two: Whether the District Court erred by finding that Farmers was subject to punitive damages because it acted with actual malice.
¶29 It should be presumed that a plaintiff "has been made whole for his injuries by compensatory damages, so punitive damages should only be awarded if the defendant's culpability ... is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence." Campbell , 538 U.S. at 419, 123 S.Ct. at 1521 ; Seltzer , ¶ 134 (the purpose of punitive damages "is to have an impact on the defendant in the form of punishment and deterrence....").
¶30 "[R]easonable punitive damages may be awarded when the defendant has been found guilty of actual fraud or actual malice." Section 27-1-221(1), MCA. Actual malice exists where a defendant
has knowledge of facts or intentionally disregards facts that create ***81 a high probability of injury to the plaintiff and:
(a) deliberately proceeds to act in conscious or intentional disregard of the high probability of injury to the plaintiff; or
(b) deliberately proceeds to act with indifference to the high probability of injury to the plaintiff.
Section 27-1-221(2), MCA. When assessing an award for punitive damages, the district court "shall clearly state the reasons for making the award in findings of fact and conclusions of law, demonstrating consideration of each of the following matters":
(i) the nature and reprehensibility of the defendant's wrongdoing;
(ii) the extent of the defendant's wrongdoing;
(iii) the intent of the defendant in committing the wrong;
(iv) the profitability of the defendant's wrongdoing, if applicable;
(v) the amount of actual damages awarded by the jury;
(vi) the defendant's net worth;
(vii) previous awards of punitive or exemplary damages against the defendant based upon the same wrongful act;
(viii) potential or prior criminal sanctions against the defendant based upon the same wrongful act; and
(ix) any other circumstances that may operate to increase or reduce, without wholly defeating, punitive damages.
Section 27-1-221(7)(b), MCA. All elements of the claim for punitive damages must be proven by clear and convincing evidence, which "is more than a preponderance of evidence but less than beyond a reasonable doubt." Section 27-1-221(5), MCA.
¶31 It is well established that a "joint tenant with the right of survivorship automatically gains the other tenant's interest in the property upon the other tenant's death, as a matter of law." In re Estate of Afrank , 2012 MT 289, ¶ 9, 367 Mont. 334, 291 P.3d 576 (citations omitted); § 70-1-307, MCA (a "joint interest is one owned by several persons in equal shares by a title created by a single will or transfer, when expressly declared in the will or transfer to be a joint tenancy or when granted or devised to executors or trustees as joint tenants...."). A joint tenant's interest ceases upon his death, and the joint property immediately passes to the surviving joint tenant. Vogele v. Estate of Schock , 229 Mont. 259, 263, 745 P.2d 1138, 1140 (1987) (citing § 70-1-307, MCA ).
¶32 The District Court concluded that Farmers acted with actual fraud and actual malice, and that John Jr. was entitled to punitive damages. In its initial order awarding punitive damages and in its order denying Farmers' motion to vacate or reduce the award of punitive damages, the District Court justified its award and analyzed ***82 relevant statutory considerations under § 27-1-221(7)(b), MCA. The District Court reasoned that Farmers blatantly disregarded its own policies and procedures regarding stock transfer and the rights associated with JTWROS. Especially egregious was Farmers' backdating of the Stock Power Form. Further, even after Farmers discovered its error, it initially refused to return the Stock to John Jr. *231 ¶33 Farmers argues that it made a good-faith mistake and promptly and repeatedly attempted to fix it. Farmers argues it had no possible motive to harm John Jr., benefit Smith-Cote, or benefit itself. Farmers further contends that, ultimately, John Jr. was not harmed and incurred no compensatory damages, rendering him ineligible for punitive damages. Farmers argues the District Court's findings of actual fraud and actual malice were based solely on the erroneous conclusion that Farmers misrepresented the stock transfer date during litigation. John Jr. counters Farmers acted with actual fraud and actual malice and proceeded with deliberate indifference toward John Jr. John Jr. argues Farmers conduct was not an isolated incident but was the result of a series of repeated, intentional, and deliberate acts designed to deprive John Jr. of his Stock.
¶34 The record supports the District Court's determination that Farmers had knowledge of, or intentionally disregarded, facts that created a high probability of injury and deliberately proceeded to act in conscious or intentional disregard to the high probability of injury to John Jr. See § 27-1-221(2), MCA. The District Court found that Farmers made multiple misrepresentations regarding the ineffective Stock transfer and concealed the fact that it backdated the Stock transfer. Farmers knew John Jr. owned the Stock and knew, or should have known, based on the advice of its own counsel and its own policy requirements that a stock power form must be affixed with a valid medallion signature guarantee before stock can be transferred. Farmers knew before John Sr. died that the Stock Power Form had not been delivered to any Edward Jones office, and that the medallion signature guarantee was not affixed until after John Sr.'s death. John Jr. did not sign any stock power form, and Farmers admitted John Jr. did not consent to transferring the shares to Smith-Cote. Nevertheless, Farmers representatives still told Smith-Cote it could transfer the Stock to her and, ultimately, Farmers did transfer the Stock. It was only after Edward Jones produced records proving the transfer did not occur on February 3, 2011, that Farmers admitted it did not actually transfer the Stock before John Sr.'s death. Farmers also admitted the Stock Power Form it accepted to make the improper transfer had been altered. The sheer implausibility of John Sr. receiving and signing the ***83 Stock Power Form in Washington, obtaining a medallion signature guarantee in Missouri, and transmitting the Form to Montana all on February 3, 2011, casts a further pall over Farmers' conduct that certainly supports the conclusion that Farmers intentionally disregarded the facts because it knew, or should have known, such a transfer was illegitimate, and the transfer led to John Jr.'s injury. See § 27-1-221(2), MCA.
¶35 Farmers further disregarded John Jr.'s rights as a shareholder when it failed to take any real steps to recover the Stock for several years. Farmers ignored John Jr.'s repeated demand for the return of the Stock, it initially requested that Smith-Cote retain the Stock Certificate, and it ignored its statutory obligation to reissue all 181.619 shares of Stock in John Jr.'s name. Farmers admitted it never notified John Jr. that it was in the process of transferring his interest in the 181.619 shares of Stock. John Jr. testified that it was not until he contacted Farmers in November 2012 that he learned of the improper conversion and Stock transfer. Although Farmers admitted to improperly transferring the Stock in December 2012, Farmers repeatedly claimed Smith-Cote was entitled to at least half of the shares. Farmers failed to fulfill its good faith obligation to John Jr. and deprived John Jr. of the benefit and use of the Stock. See § 27-1-221(2), MCA.
¶36 In direct contravention of its own policies and Montana law, Farmers allowed one stock owner who is a joint tenant with a right of survivorship to unilaterally terminate the other joint tenant's interest. See In re Estate of Afrank , ¶ 9 ; Cote Family Ex. List, Ex. 137 J, Farmers' Combined Disc. Requests, Farmers' Stock Transfer Policy ("[s]tock held by joint tenants cannot be transferred without the consent of all the joint tenants named on the certificate....") (emphasis added). Thus, the termination of the JTWROS and transfer of all shares to John Sr., and then to Smith-Cote, was never accomplished. Instead, upon John Sr.'s death on February 5, 2011, all *232 181.619 shares of Stock transferred to John Jr. automatically. See Vogele , 229 Mont. at 262, 745 P.2d at 1140. Although Farmers backdated the February Form, Stock Certificate cancellation, and Stock transfer to Smith-Cote to February 3, 2011, the earliest date any transfer could have been completed was February 7, 2011. There is no excuse for Farmers' willful disregard of its own policies and procedures, Montana law, and the rights associated with such stock.
¶37 We are satisfied that the District Court considered the relevant and applicable factors of § 27-1-221(7)(b), MCA, prior to awarding John Jr. punitive damages. Based on the record before it, the District Court ***84 thoroughly analyzed the nature and reprehensibility of Farmers' wrongdoing; the extent of Farmers' wrongdoing; the intent of Farmers in committing the wrong; the amount of the actual damages to John Jr.; Farmers' net worth; previous awards of punitive or exemplary damages against Farmers based upon the same wrongful act; potential or prior criminal sanctions against Farmers based upon the same wrongful act; and any other circumstances that operated to increase or reduce punitive damages. See § 27-1-221(7)(b), MCA. The District Court's findings are not clearly erroneous. See Marie Deonier & Assocs. , ¶ 39. Instead, the record clearly and convincingly shows Farmers acted with actual malice,[6] see § 27-1-221(2), MCA, and Farmers' conduct warranted punitive damages, see Campbell , 538 U.S. at 419, 123 S.Ct. at 1521. The District Court did not abuse its discretion when it determined John Jr. was entitled to punitive damages. See Osman , ¶ 7.
¶38 Issue Three: Whether the award of punitive damages was excessive.
¶39 Punitive damages may be imposed " 'to further a State's legitimate interests in punishing unlawful conduct and deterring its repetition.' " McCulley , ¶ 43 (quoting BMW of N. Am. v. Gore , 517 U.S. 559, 568, 116 S.Ct. 1589, 1595, 134 L.Ed.2d 809 (1996) ). However, a grossly excessive award may violate the Due Process Clause of the Fourteenth Amendment. McCulley , ¶¶ 43-44 (citing Gore , 517 U.S. at 562, 568, 116 S.Ct. at 1592, 1595 ). Courts should not employ a strict mathematical formula in determining whether an award is excessive under the Due Process Clause. McCulley , ¶¶ 43-44, 53-54 (quoting Gore , 517 U.S. at 582, 116 S.Ct. at 1602 ). Instead, a district court must consider first and foremost the degree of reprehensibility of the defendant's conduct. McCulley , ¶¶ 44-45. Second, a district court must weigh the disparity, or ratio, between the actual or potential harms suffered by the plaintiff and the punitive damages award; "few awards exceeding a single-digit ratio between punitive and compensatory damages ... will satisfy due process...." McCulley , ¶¶ 44, 53 (quoting Campbell , 538 U.S. at 425, 123 S.Ct. at 1524 ). Finally, a district court should consider the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. McCulley , ¶¶ 18, 43-44, 54-55 (upholding a punitive damages award of $5 million where compensatory damages were $1 million) (citing Campbell , 538 U.S. at 418, 123 S.Ct. at 1520 ); Seltzer , ¶¶ 1, 190, 199 (upholding a ***85 punitive damages award of $9.9 million). In Montana, punitive damages awards are also subject to statutory limitations: such awards "may not exceed $10 million or [three percent] of a defendant's net worth, whichever is less." Section 27-1-220(3), MCA.
¶40 After determining Farmers acted with actual fraud and actual malice, the District Court awarded John Jr. $1.1 million in punitive damages. Farmers argues the punitive damages award was excessive and unconstitutional and must therefore be reversed. John Jr. counters Farmers' conduct was malicious, fraudulent, and especially reprehensible given its statutory obligations, and that the District Court's punitive damages award was not unconstitutional or excessive and well within the statutory boundaries. We agree.
¶41 As previously discussed, the record contains ample evidence demonstrating *233 Farmers acted with actual malice. See McCulley , ¶¶ 45, 51. Farmers knew or should have known about its own policy requirements regarding stock power forms, medallion signature guarantees, and valid stock transfers. Farmers even received advice from its own counsel in this regard. Despite this, Farmers proceeded with deliberate indifference to the harm caused to John Jr. The ineffective transfer was deliberately made in violation of Farmers' policies, procedures, and requirements, and Montana law. Once confronted with its fraudulent activity, Farmers failed to retrieve the Stock from Smith-Cote for years. Further, the Stock records were in Farmers' control, and yet Farmers has no records to document or support the transaction. See McCulley , ¶¶ 45, 51. The award is also not excessive when compared to awards imposed in comparable cases. See McCulley , ¶¶ 43-44, 55.
¶42 The award did not violate due process and fell within a single-digit ratio between the punitive and compensatory damages awarded. See McCulley , ¶¶ 45, 53-54, 56. Farmers converted the Stock valued at $477,846.85 for the full 181.619 shares. Although Farmers offered to refund half the Stock to John Jr. in fairly short order, it continued to withhold the other half based on fraudulently transferred stock certificates. Even to the extent that it withheld half, the value of that Stock is approximately $238,923.43. Punitive damages were $1.1 million. Regardless of whether the compensatory damages are calculated at $477,846.85 or $238,923.43, both values are well within the single-digit factor guidepost of Gore and Campbell and well below the $10 million statutory cap pursuant to § 27-1-220(3), MCA. Further, Farmers admits a 2015 net worth of $38,130,000. Thus the $1.1 million in punitive damages is also less than three percent of Farmers' net ***86 worth.[7] See § 27-1-220(3), MCA. By either measure-Montana statute or under a due process analysis-the punitive damage award was not excessive. The District Court correctly determined the amount of the award. See Marie Deonier & Assocs. , ¶ 39 ; Osman , ¶ 7. The award of punitive damages was not excessive and fell within acceptable constitutional and statutory parameters. See McCulley , ¶¶ 43-44, 54-55.
CONCLUSION
¶43 The District Court correctly held that the Stock return amounted to compensatory damages. This enabled the District Court to consider punitive damages against Farmers. The District Court did not err in awarding punitive damages to John Jr. against Farmers and did not abuse its discretion in determining the amount of the award. Finally, the award of punitive damages was not excessive and fell within acceptable constitutional and statutory parameters. We affirm.
We Concur:
MIKE McGRATH, C.J.
DIRK M. SANDEFUR, J.
INGRID GUSTAFSON, J.

This Court affirmed the District Court's determination that Smith-Cote breached her fiduciary duty, warranting her removal as personal representative of John Sr.'s Estate, and upheld the attorney fees award against Smith-Cote. In re Estate of Cote , ¶¶ 14-16.

John Jr. acquired the Stock when his grandmother, Ruth Cote, distributed it to John Jr. and John Sr. through the Ruth Cote Trust.

The record shows Farmers contacted its counsel about the requirements for transferring the Stock. On January 20, 2011, Farmers' counsel advised that John Sr. was required to sign a stock power form "in the presence of a person authorized to give a Medallion guarantee...."

An issuer that is liable for wrongful registration of transfer ... on demand shall
provide the person entitled to the security with a like certificated or uncertificated security, and any payments or distributions that the person did not receive as a result of the wrongful registration.
Del. Code Ann. tit. 6, § 8-404.

John Jr. testified he declined to sign the initial Stock Power Form that would have transferred half the Stock, plus dividends and interest, into his possession because he feared such action would result in the other half of his shares being withheld or forfeited.

Because the statute is written in the disjunctive, we need not analyze whether Farmers committed actual fraud. See § 27-1-221(1), MCA.

Three percent of Farmers' net worth would be $1,143,900. See § 27-1-220(3), MCA.